### IN THE

# SUPREME COURT OF JUDICATURE

### OF THE

# STATE OF NEW-YORK,

IN OCTOBER TERM, 1838—IN THE SIXTY-FOURTH YEAR OF THE INDEPENDENCE
OF THE UNITED STATES.

---

## The Mayor, &c. of the city of New-York *vs.* Stone and others.

Under the act subjecting the city of New-York to the payment of damages occa-
sioned by the destruction of buildings by order of the Mayor, to prevent the
spreading of a conflagration, no one but *owners* or persons having *an estate or
interest in the building destroyed* are entitled to claim damages.

An *owner* or *lessee* who has goods on hand as a factor or commission merchant,
and has a *lien* upon the same for *charges* or *advances*, may claim damages *to the
amount of his lien;* but he is not entitled to claim the *value of the goods* for the
benefit of the owner.

A person having *goods stored in a building destroyed*, of which he is not a *tenant* or
*occupant*, is not entitled to be a claimant under the act.

It is no bar to a claim that the party asking an assessment had effected an insurance
upon the property destroyed, and has received moneys on such insurance.

*Interest* upon the value of the goods lost, is a proper item in the estimate of dama-
ges.

This case came before the court on a return to a *certiorari* made
by the common pleas of New-York, to review the proceedings

had in that court for the purpose of assessing the damages sustained by the defendants in error in consequence of the *destruction of a building*, of which they were *lessees*, by order of the mayor of New-York with the concurrence of two of the aldermen of the city, by virtue of the powers conferred upon him by the 81st section of the act particularly relating to the city of New-York, 2 *R. L.* 368, during the *great fire* in that city, which commenced 16th December, 1835. The return shewed, 1. A *precept* issued by the mayor commanding the sheriff to summon a jury to enquire, &c. 2. An *inquisition* of the jury finding that the defendants in error were *lessees* of a building destroyed, and assessing their damages at a certain sum. 3. An *affidavit* of the counsel of the corporation detailing the facts elicited on the inquiry, as that the defendants in error had at that time goods in store to `the amount of $225,743.70, of which goods a part only amounting in value to $4,586.52 belonged to them, and the residue was held by them as *factors* or commission merchants, and that a portion of the goods belonging to them to the value of $1,614.80 was saved ; that the goods in the store at the time of the fire were *insured* to the amount of $106,500 on policies of insurance, of which sum $60,960 had been paid by the insurers, and received by the defendants ·in error. 4. An agreement that the assured should pay over to the insurers such proportion of the damages which should be recovered in their proceedings as should belong to them ; and 5. A rule of the common pleas setting forth the inquisition and stating the filing of the affidavit of the counsel of the corporation, and then *confirming* the inquisition. There were two other cases brought up at the same time in which the proceedings were the same as above stated, except that by one of the inquisitions damages were assessed and allowed to several individuals without stating the *interest* they had in the building destroyed, or the *nature of the loss* sustained, as thus " and they further upon their oaths say that George " Meyer having an interest in the said premises Number 57. " Water-street, has sustained damage by means in the said writ " mentioned over and above his costs and expenses of the said

"inquisition and proceedings to the amount of $4,345.38, be-
"side his expenses incurred about the said injury, assessment and
"proceedings to be taxed and allowed." In reference to which
assessment in favor of George Meyer the counsel for the corpo-
ration in his affidavit stated, "that a claim was also made by and
"on behalf of George Meyer for merchandize destroyed in the
"cellar of the said building No. 57, Water-street, valued at $4,-
"959.50, at a credit price; in relation to which claim it appeared
"in evidence that the whole of the said merchandize belonged
"to persons in London, and had been *consigned* to the said George
"Meyer for sale; and that the same was deposited by him *on*
"*storage* with the said Lansing and Monro in the said cellar."
The counsel for the corporation further stated in his affidavits
in one or other of the cases, that the judge presiding at the
taking of the inquests charged the jury in substance: that a *lessee* of
a building destroyed was entitled to recover the full value of goods
lost by such destruction, *although he held them merely as a factor*
for sale on commission, because a commission merchant, having
goods on hand for sale, upon which he had made advances or had
a lien, was in law deemed the owner of the goods and was entitled
to recover the full value thereof in his own name, subject only
to an account with his principal; that the circumstance of the
*goods having been insured,* and of moneys having been received
on such insurance, was not a ground of diminishing the recovery
inasmuch as the assurers had a right by substitution to indemnity
in the name of the assured under the act; that persons having
property *stored in a building, although not tenants or occupants*
thereof, were protected by the act equally with owners, lessees
or occupants, and might be claimants under the act; that it made
no difference whether the property belonged to the claimant in
his own right, or was held by him as a consignee, commission
merchant, factor or agent, and that the jury would be warranted
in allowing *interest* upon the value of the goods destroyed; which
charge was excepted to by the counsel for the corporation. The
jury in making their assessment *followed the instructions of the
judge.* The causes were argued by

*R. Emmet & G. F. Talman,* for the corporation.

*D. Lord, jun. & S. A. Foot,* for the defendants in error.

*By the Court,* NELSON, Ch. J.   We have already determined, in construing the 81st section of the act relating to the city of New-York, that the owner or lessee of the building destroyed was entitled to an assessment of damages for the loss sustained in respect to merchandize, and the other personal effects belonging to him and contained therein.   17 *Wendell,* 285.   It was not then important to consider whether the owner of the goods, who had *no estate or interest in the building,* came within the purview of the statute ; that question is now presented ; and also whether, if he possess such interest, he can claim damages for goods held by him for sale on commission.

In respect to the first question, the statute, I am of opinion, is too explicit to admit of doubt.   It provides that any person *interested in the building* may apply for the precept, and that the jury may assess the damages which the *" owners of such building,* and all persons having an estate or *interest therein,"* have sustained.   The term *interest,* (the only word upon which a doubt can possibly be raised,) in the connection in which it is found, clearly imports some share in the *building* itself, and was intended, probably, if not to be regarded as synonymous with *estate,* to include any degree of interest or claim therein which might not, in technical language, fall within any of the subdivisions of estates. It may well however, be regarded as synonymous, as the term *estate,* when used in reference to land, signifies simply an *interest* therein ; 2 *Black. Comm.* 103 ; and both terms are in common use in the transfer of titles, as may be seen in the various forms of conveyance.   The word *interest* is also frequently used by the legislature in respect to *real estate.*   1 *R. L.* 503, § 1.   *Laws of* 1816, *p.* 63, *and others which might be referred to.*

The second question is more embarrassing.   So far as *charges* or *advances* upon the goods held on commission exist, the lessee must be considered, to this extent, as owner having a *lien* upon

them to such amount; but beyond this there is difficulty in dis-
covering how his rights or *interests* are connected with the loss
or damages incurred. The principle and provisions of the statute
are not like those of Ed. 1, commonly called the statute of *hue
and cry,* or 4 Geo. 1, called the *riot act,* or 9 Geo. 1, called the
*black act,* by which the inhabitants within the hundred are made
responsible to the party aggrieved, either in terms or in legal
effect, for the damages sustained. There no restriction existed
in respect to the description of persons to be indemnified; *whoever*
was *robbed,* had his *dwelling demolished* by a riotous assemblage,
or his cattle *maliciously maimed,* &c. could prosecute the hundred
and recover his damages. This body was said to have been
simply substituted in place of the trespassers; and any person
who could maintain the action of trespass at common law might
well pursue the remedy under these statutes. They gave an abso-
lute right of redress to the party injured, and whether obtained
through his bailee, trustee, agent or servant, was altogether unim-
portant as respected the defendants, provided the forms of law
authorized the remedy in the names of the parties suing, so as
the recovery should be conclusive upon the real party in interest;
because if the suit could not be sustained by these persons, the
owner himself might bring it. Hence it was held, that a servant
robbed in his master's absence might maintain the action, and
declare that he was possessed *as of his own proper goods,* or the
master might bring the action in his own name; so the servant
might recover for the *whole,* where part belonged to him and
part to the master; but if the robbery was in presence of the
master, then he alone could sue. 3 *Bac. Abr.* 512. 2 *Salk.*
613. 2 *Saund.* 379, 380, *and n.* 15. *See also note to Pinkney*
v. *Inhabitants of East Hundred, id.* 374, 379.

Here the damages to be assessed and recovered are expressly
limited to persons possessing *an estate* or *interest in the building*
destroyed; not given generally to the *party aggrieved.* It is the
damages which this particular description of persons, and none
else, have sustained, which are provided for by the statute. We
must remember too, that the act of pulling down the building was

lawful at common law; that here is no substitution of the city in the place of trespassers, to be held accountable upon prnciples regulating the damages, the same as if claimed against them; and that the damages rest solely, both as regards the *right* to recover and *liability* to pay, upon the terms of the statute itself. I admit *as to the claimant* the statute is remedial, and should be liberally expounded in respect to him; but this principle of con-struction will not carry us out of its provisions and extend the remedy to persons not included, and in respect to whom the *damages of the claimant* himself have no necessary connection. The plain import of the statute is derived from its terms, being to keep harmless *persons interested in the buildings* pulled down; when it is so expounded as to accomplish this, its object is completely attained.

If the act (as in the acts against the hundred) had provided indemnity generally to all persons sustaining damages, then *the right* to compensation being secured to all, the only question that could arise would be in respect to the form of the *remedy*; and in analogy to the course of proceedings at common law, there could have been no great difficulty in permitting the party in possession of the goods, such as consignee, bailee, &c. to recover for the owner. *Possession alone* might then have sufficed for the purpose of the remedy under the law, leaving the plaintiff in the action to settle with the party in interest. But how can we say that the owner may recover here through his agent when the corporation are not made liable for the loss? The question is not one of remedy, but of *right;* the bailee is met by the objection that the owner is not provided for in the particular case; it not coming within the scope and meaning of the act; *damages* are given to *the party* showing *an interest in the building*; those which *he* has sustained, not the bailor or some third person. To say therefore that he may recover for goods belonging to the consignor, bailor or the like, would be violating the principle of the statute through the form of the remedy. Where the case of the claimant comes within the provision of the law, and he is entitled to damages, any remedy for the loss that he may have against

third persons is not to be regarded ; it is enough for him that he may look to *that* given to him under the statute.

Interest was properly allowed ; it entered into an estimate of the loss which the party had sustained, and was a part of the damages.