## Patrick J. Perrott v. James Shearer.

*Objection to evidence: Waiver.* The proper time to take an objection to the for-
mal proof of a paper, is when it is offered in evidence; and if no objection is
then made, and the paper is allowed to be read to the jury, the party offering
it is always at liberty to infer that his opponent is satisfied with its due exe-
cution, and proposes to raise no objection on that score.

*Evidence: Jury: Charge of court.* When evidence is submitted to a jury as
bearing upon a certain point, it is for them, and not for the court to deter-
mine, whether it tends to establish that point or not. When a judge is asked
to instruct a jury that the evidence tends to prove a certain fact, he is, in
effect, requested to give a direction to their judgment, which may, if they fol-
low him, overrule their own convictions.

*Assignment of goods: Fire: Damages: Assignee.* The goods included in the
assignment in this case, and while under the control of the sheriff, by virtue of
his attachment levy, were accidentally destroyed by fire.

The assignee (plaintiff below) had effected an insurance on the goods, and
collected the money.

In an action of trespass by the assignee, defendant insisted that plaintiff,
having been paid for the goods, could only recover damages for their deten-
tion up to the time of the fire, but the Circuit Judge instructed the jury that
he might recover the full value of the goods.

*Held,* that the instruction was correct, defendant being a wrong doer, having
no concern with any contract of insurance the plaintiff might have, and being
able to purge himself of his wrong only by paying for the goods which he had
wrongful possession of.

*Heard April 24th.    Decided April 28th.*

Error to Bay Circuit.

This was an action of trespass against the defendant,
plaintiff in error, for seizing and taking certain goods of the
plaintiff, defendant in error.

The defendant below pleaded the general issue and gave
notice that the property seized was in possession of one
Henry H. Swinscoe; that defendant, at said time, was
Sheriff of Bay county; that on the 24th day of July, 1865,
a writ of attachment was issued out of the Bay County
Circuit Court, against the goods and chattels of said Swin-
scoe, and that he seized and took the property mentioned,
if at all, by virtue of said attachment, etc.

The cause was tried by a jury.

Henry H. Swinscoe and George E. Swinscoe, his son,
were co-partners doing business in Bay City. Some time

PERROTT *v.* SHEARER.

in June, 1865, George E. Swinscoe went to Chicago, in the State of Illinois, to reside: Henry H. Swinscoe still remaining in Bay City, doing business under the firm name of Swinscoe & Son. The firm being in embarrassed circumstances, on the 24th day of July, 1865, an assignment for the benefit of the creditors of the firm, was made to James Shearer, of Bay City. The assignment was executed by Henry H. Swinscoe, and also by George E. Swinscoe by his agent, Henry H. Swinscoe. On the same day, Mr. Shearer took possession of the property assigned, and commenced taking an inventory of the property. On the same day, viz: the 24th day of July, an attachment was issued out of the Circuit Court for Bay County in favor of Beatty & Fitzsimmons, of Detroit, and against Henry H. Swinscoe and John McDermott as defendants, and delivered to the plaintiff in error, who was then Sheriff of Bay County, commanding him to seize, etc., the goods of Henry H. Swinscoe; and on the 25th day of July, 1865, as appeared from the return of the plaintiff in error as Sheriff, he seized the goods in question by virtue of said writ.

The goods were destroyed by fire, while in possession of plaintiff in error as such officer, on the 8th day of October, 1865; but the said Shearer holding a policy of insurance thereon, collected the amount so insured.

Judgment was rendered for the full value of the goods.

The rulings of the court are stated in the opinion.

*Webber & Smith,* for plaintiff in error.

1. On the trial, the defendant below offered to prove that the plaintiff claimed to be the owner of the goods at the time of the fire, and that he had received on that claim from the Insurance Companies the full value of the goods. This was clearly admissible in mitigation of damages. Admitting all that the plaintiff claimed, that he was entitled to the goods at the time of the levy, and that the sheriff

was a wrong-doer in seizing them as the property of Swinscoe, yet the taking of them did not divest the plaintiff of his ownership.   He might bring replevin for them at any time, and thus recover the goods with damages for detention.   If the sheriff became convinced that he had no right to hold them, he could offer to restore them to the plaintiff, who might accept them if he saw fit to do so, and who would then only have his action for damages for the taking, but not for the value.   By claiming his ownership to continue and to exist at the time of the fire, and by receiving from the Insurance Companies the value of the goods, it is as though he had at the time of the fire received back his goods from the hands of the sheriff; or it is as though he had on that day repossessed himself of his goods by replevin.

Shearer's possession under the assignment was taken on the 24th of July, and the levy was on the next day.   There is no element in the case which can be assigned as a reason for punishing the defendant by making him pay more than the damage sustained, nor for rewarding the plaintiff by allowing him a double value for the goods.

Only one of the parties had an insurable interest in the goods, and that was the owner.   If Mr. Shearer was the owner, and had his interest as such protected by insurance, then the goods were his, the loss by fire was his loss, for which the insurance compensates him, and he can only recover from the defendant damages accrued to that time, not including the value of the goods.

2.   The record discloses the fact that this property was the property of Swinscoe & Son.   That one of the firm assumed, in the absence of the other, to make a general assignment with preferences which was not ratified, assented to or approved by the other partner, so far as shown.

This was a part of the plaintiff's case.   It was essential to his title.   His only right was under this assignment. If this was void, he had no rights in the property, and the

sheriff with his writ, was entitled to seize the goods.     The
execution of this assignment was not even made in the
firm name.     It was signed by the debtor against whom the
attachments were issued ( on the same day he signed it ), in
his own name, and also with the name of his partner; he
assuming to act as his attorney, but no authority is shown
to act as such : against creditors this was essential.     On
this point we cite *1 Hoff. Ch. 511; Har. Ch. 172; 1
Doug. 477; 1 E. D. Smith, 341; 3 Sand. S. C. 284, 296;
5 Mo. 463; 6 Id. 317; 17 Vt. 390; 5 Paige, 30; 3 Watts
and Sergt. 454; Coll. on Part. 395; Story on Part. § 101;
Burrill on Ass'gts, pp. 36–55.*

We do not find any case where an assignment with pref-
erences, executed by one partner without the knowledge or
approval of the other, has been upheld.     It was void as to
the absent partner, void as to creditors, and void *in toto.
Har. Ch. 172; 1 Doug. 477; 2 Mich. 445.*

*Marston & Hatch,* and *A. B. Maynard,* for defendant in
error.

1.     The collection of the insurance policy by the plain-
tiff below is not inconsistent with his right to recover
against the sheriff for the illegal taking.     In the one case,
it is a recovery from the insurance company upon the *con-
tract of insurance.— 7 Cush. 1; 2 Gray, 216.*     In the other
it is a recovery against a wrong doer, for his *tort.*

If the defendant had restored the goods to the plaintiff,
and the plaintiff had accepted them, that fact might be
shown in mitigation of damages; but it would not justify
the *tort* nor absolve the *tort feaser* from the legal conse-
quences of his wrongful act.— *3 Zabriskie, 347.*

Where one of the partners is absent from the country at
the time of making an assignment, and the firm is insol-
vent, the resident partner can make an assignment of the
property for the benefit of creditors.— *Pars. on Part. 165–6
and note; 1 Brock. 456; 1 Doug. 488, 499; 5 Cranch, 289;*

*4 Day, 428; 4 McCord's, Law, 519; 3 Paige, 523; 8 Leigh, 4 Va. 515; Watts, (Pa.) 22; 6 Watts & Sergt. 300.*

The assignment was signed by George E. Swinscoe, by his agent Henry H. Swinscoe. No objection was made to the reading of the same on the trial because the authority of the agent to sign the principal's name was not shown, and defendants could not for the first time raise the objection on final argument.

By allowing the assignment to be read without objection they waived the question as to Swinscoe's authority to act as agent for his son.—*8 Mich. 350; 5 Pick. 219; 4 Mass. 254; 13 Conn. 155; 8 N. H. 338; 10 Id. 167; 12 Id.*

COOLEY CH. J.

The plaintiff in error, as sheriff of the county of Bay, by virtue of a writ of attachment against the goods and chattels of Henry H. Swinscoe, levied upon a stock of goods which Shearer claimed as assignee of the firm of Swinscoe & Son, composed of said Henry H. Swinscoe and George E. Swinscoe. On the trial, the assignment was offered in evidence, and it appeared to be a general assignment from Henry H. and George E. Swinscoe, constituting Shearer trustee for the benefit of their creditors, and preferring the claims of certain of those creditors to others. The assignment was executed by Henry H. Swinscoe, in his own name, and that of George E. Swinscoe was signed thereto by Henry H. Swinscoe, purporting to act as his attorney. It appeared that, at the time of its execution, George E. Swinscoe was at Chicago, Illinois, and had been for about three or four weeks, and no evidence was given to show that he assented to or approved of the assignment, before or afterwards, or that Henry H. Swinscoe had any express authority from him to execute it. Nevertheless the assignment was allowed to be read in evidence without objection.

When the case went to the jury, the Circuit Judge was requested to instruct them that one partner can not make

PERROTT v. SHEARER.

an assignment of the partnership property, preferring certain creditors, to the exclusion of others, without the assent of the other members of the partnership. This instruction the judge refused to give, stating that the question did not arise in the case.

We think the Circuit Judge was correct in this refusal. The assignment purported to be duly executed by both parners, and was conceded to be properly executed by one of them. Whether the other had executed, depended upon the question whether the party assuming to sign on his behalf had lawful authority for that purpose. Without such authority, it was claimed that the assignment was void, not only as to him, but also as to the other party who had executed in his own name. On the theory of the defense, the paper was not admissible in evidence, for any purpose, until the authority of George E. Swinscoe to Henry H. Swinscoe had been proved. Nevertheless, it was allowed to be put in evidence without objection, and without this preliminary proof. We think this must be regarded as a waiver of the right to insist upon such proof, and that the defendant below was too late to raise the objection, for the first time, when the judge was about to give the case to the jury. The proper time to take an objection to the formal proof of a paper, is when it is offered in evidence; and if no objection is then made, and the paper is allowed to be read to the jury, the party offering it is always at liberty to infer that his opponent is satisfied with its due execution, and proposes to raise no objection on that score.

It further appears from the record, that the attachment was sued out by the firm of Beaty & Fitzsimons; and evidence was given by the defendant, tending to show that their attorney, before the writ was levied, had a conversation with the plaintiff, concerning his rights in the goods, and the liability of the same to be seized on the writ, and that an arrangement was then made between the attorney and the plaintiff, by which defendant was to take possession

of the goods, but without removing the same, and that they should be held by the defendant, subject to a future adjustment to be had between the parties in interest; and that they were taken possession of by defendant, under this arrangement. The defendant's testimony further tended to prove that, after this conversation and arrangement, the plaintiff, the defendant, and said attorney, went together to the store where the goods were; that plaintiff requested one Knox, who was inside taking an inventory for him, to unlock the door, which he did, and that the three then walked into the store, looked about, and the plaintiff then directed Knox, when he had completed his inventory, to deliver the key of the store to defendant, which he afterwards did. The plaintiff, on the other hand, gave evidence tending to show that no arrangement was made by him for a surrender of possession to defendant, except as the plaintiff supposed he was yielding to the superior force of legal process.

The defendant, on this evidence, requested the court to charge the jury, that if they should find that the plaintiff directed his agent, Mr. Knox, to deliver to the defendant the key to the building in which the goods were contained, and expressed no objection to the defendant taking possession of said goods, these facts were evidence tending to prove the consent of said plaintiff to the taking possession thereof by the defendant. The Circuit Judge declined to give this instruction, but did say to the jury, that the circumstance mentioned was a fact to be weighed by them; and submitted it to them as bearing on that question. In this, we think, the Circuit Judge was correct.

When evidence is submitted to a jury, as bearing upon a certain point, it is for them and not for the court to determine whether it tends to establish that point or not. Whether it does so, in their opinion, may depend, not alone upon that particular item of evidence, but upon that evidence considered in its relation to other evidence, which may so far qualify and explain it, that it shall have no

tendency whatever to prove the position for which it was offered, and which, if it were the sole evidence in the case, it might appear to establish. The duty to examine, weigh, and compare in these cases is not entrusted to the judge, and when he is asked to instruct the jury that the evidence tends to prove a certain fact, he is, in effect requested to give a direction to their judgment, which may, if they follow him, overrule and control their own convictions. We think the Circuit Judge submitted this evidence to the jury in the proper manner; and if he had given the instruction requested, he would only have been drawing his own inferences from the evidence, and expressing an opinion on matters lying within the peculiar province of the jury. A party has no right to demand that such instructions be given.

The principal question in the case springs from the fact that the goods, while under the control of the defendant, in pursuance, as the plaintiff claimed, of said attachment levy, were accidentally destroyed by fire. The plaintiff, it appears, held, at the time, insurance policies upon them to their full value, and, after the fire, presented to the insurance companies proofs of the loss, and received pay therefor. Upon this state of facts it was claimed by defendant, that plaintiff's position was the same as if he had repossessed himself of the goods by replevin; and that he was entitled to recover damages only for their detention up to the time of the fire. The Circuit Judge held differently, and instructed the jury that the plaintiff was entitled to recover the full value of the goods, and he had judgment for the value accordingly.

It certainly strikes one, at first, as somewhat anomalous, that a party should be in position to legally recover of two different parties the full value of goods which he has lost; but we think the law warrants it in the present case, and that the defendant suffers no wrong by it. He is found to be a wrong doer in seizing the goods, and he can not relieve himself from responsibility to account for their full

value except by restoring them. He has no concern with
any contract the plaintiff may have with any other party in
regard to the goods, and his rights or liabilities can neither
be increased nor diminished by the fact that such a con-
tract exists. He has no equities as against the plaintiff
which can entitle him, under any circumstances, to an as-
signment of the plaintiff's policies of insurance. The acci-
dental destruction of the goods in his hands, was one of
the risks he run when the trespass was committed, and we
do not see how the law can relieve him from the conse-
quences. If the owner, under such circumstances, keeps his
interest insured, he can not be held to pay the money ex-
pended for that purpose for the interest of the trespasser.
He already has a right of action for the full value of the
goods, and he does not give that away by taking a contract
of insurance. For the latter he pays an equivalent in the
premium, and is, therefore, entitled to the benefit of it, if
any benefit shall result. The trespasser pays nothing for it,
and is, therefore, justly entitled to no return. The case, we
think, is within the principle of *Merrick v. Brainard, 38
Barb. 574*, which appears to us to have been correctly deci-
ded. The plaintiff recovers of the defendant for the wrong
that has been done him in taking his goods; and he re-
covers of the insurance company a large sum for a small
outlay, because such payment was the risk they assumed,
and for which they were fairly compensated. It is not a
question of importance in this inquiry, whether the act of
the defendant caused the loss or not: his equitable claim
to a reduction of damages, if he could have any, would
spring from the fact that the plaintiff recovers pay for his
property twice; but the answer to this is, that he recovers
but once for the wrong done him, and he receives the in-
surance money upon a contract to which the defendant is
in no way privy, and in respect to which his own wrongful
act can give him no equities.

We discover no error in the record, and the judgment must be affirmed, with costs.

CAMPBELL and GRAVES JJ. concurred.

CHRISTIANCY J. did not sit.