### AT THE

## NOVEMBER SESSION 1869, IN BOSTON.

PRESENT:

HON. REUBEN A. CHAPMAN, CHIEF JUSTICE.
HON. HORACE GRAY, JR., ⎫
HON. JOHN WELLS, ⎪
HON. JAMES D. COLT, ⎬ JUSTICES.
HON. SETH AMES, ⎪
HON. MARCUS MORTON, ⎭

## SUFFOLK COUNTY.

### WILLIAM R. CLARK & another *vs.* LORENZO WILSON.

The holders of a bill of sale of a vessel, absolute on its face, though intended as a mortgage, may maintain an action for her conversion against a person claiming under a barratrous sale by the master; although on learning of the barratry they abandoned her to the insurers, and received payment from them as on a total loss.

TORT for conversion of the schooner Lena. At the trial in the superior court, before *Brigham,* C. J., it appeared that the schooner was built by Josiah French, and mortgaged by him to the plaintiffs; that afterwards French gave them a bill of sale of the vessel, absolute on its face, but intended as collateral security for advances by them; that this bill of sale was duly registered at the custom house; and that the vessel was then

sent to sea by French, under the charge of a master who barra trously sold her to John Kennedy, who, in his turn, two days afterwards, sold her to the defendant.

The defendant offered evidence tending to show that the plaintiffs had insured the schooner; that, upon receiving information of her sale, they abandoned her, with the assent of French, to the underwriters; and that they afterwards recovered from the underwriters, as for a total loss (see 100 Mass. 509); but the judge excluded this evidence. The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions.

*H. W. Paine & R. M. Morse, Jr.*, for the defendant.

*S. Bartlett & E. H. Abbot*, for the plaintiffs.

GRAY, J. The jury have found the defendant guilty of a conversion of the vessel sued for, under instructions to which no exception was taken.

The previous bill of sale of the vessel from the owner to the plaintiffs, absolute in terms, and recorded according to the statutes of the United States, though intended by the parties as collateral security for advances on the ship, transferred the legal title to the plaintiffs, (if not already transferred by the earlier mortgage,) with the right of maintaining an action against a wrongdoer for the conversion of the property. *Woodruff* v. *Halsey*, 8 Pick. 333. *Coles* v. *Clark*, 3 Cush. 399. *Esson* v. *Tarbell*, 9 Cush. 407. *Pratt* v. *Harlow*, 16 Gray, 379.

The only question in the case, which requires much consideration, is, whether the abandonment by the plaintiffs to the underwriters, and recovery and payment of a total loss by the barratrous sale of the master, under which the defendant claimed title, transferred all the plaintiffs' rights to the insurers, so as to prevent this action from being afterwards brought in the plaintiffs' name against this defendant.

The case does not require us particularly to consider the rights of the mortgagor against the plaintiff, or of the insurance company against the mortgagor. It may be said generally, that, in the absence of express stipulations, a policy of insurance obtained by a mortgagee is collateral to and independent of the contract between him and his mortgagor. If a mortgagee of

real estate, without authority from or agreement with the mort-
gagor, obtains insurance against fire, the mortgagor cannot be
charged with any part of the premiums paid, nor share in the
amount recovered in case of loss. *White* v. *Brown*, 2 Cush.
412. *Fowley* v. *Palmer*, 5 Gray, 549. *Russell* v. *Southard*, 12
How. 139, 157. *Dobson* v. *Land*, 8 Hare, 216 ; *S. C.* 4 De G.
& Sm. 575. *Bellamy* v. *Brickenden*, 2 Johns. & Hem. 137.
In the case of these plaintiffs against their underwriters, the
same rule was declared to apply in marine insurance ; and it
was held that the mortgagor was not the owner of the vessel
in such a sense as to prevent the plaintiffs from recovering,
under a policy effected by them, for the barratry of a master ap-
pointed by the mortgagor. *Clark* v. *Neptune Insurance Co.* 100
Mass. 509. It is also established in this Commonwealth, that
a mortgagee of real estate, who, independently of the mort-
gagor, insures his own interest, either by specific description or
generally, is not bound, at law or equity, to assign his mortgage,
or any part thereof, to the insurer, upon the payment of a loss.
*King* v. *State Insurance Co.* 7 Cush. 1. *Foster* v. *Equitable In-
surance Co.* 2 Gray, 216. *Suffolk Insurance Co.* v. *Boyden*, 9
Allen, 123. Whether, in the case of marine insurance, an aban-
donment by a mortgagor for a total loss would give the insurers
any greater rights in the mortgaged property, or in the debt
secured thereby, is not now before us. See *Trull* v. *Roxbury
Insurance Co.* 3 Cush. 267, 268; *King* v. *State Insurance Co.*
7 Cush. 12 ; *Rice* v. *Cobb*, 9 Cush. 302; *Rice* v. *Brown*, Ib. 308.

No question is here presented of the title of the insurers to
the property itself ; nor of their interest in a contract between
the assured and another party, existing before and unaffected by
the loss ; but only of their right against a party previously liable
for the very act which caused the loss for which the insurers
have paid. Even in the case of fire insurance, payment of a
.oss by the insurers doubtless vests in them, at law as well as in
equity, a corresponding right in any damages which may be
recovered against other parties responsible for the loss, as, for ex-
ample, by actions under statutes against the hundred for acts of
rioters, or against the proprietors of a steamboat or railroad for

fire communicated from their engines. *Mason* v. *Sainsbury*, 3 Doug. 61. *London Assurance Co.* v. *Sainsbury*, Ib. 245. *Clark* v. *Blything*, 3 D. & R. 489; *S. C.* 2 B. & C. 254. *Quebec Assurance Co.* v. *St. Louis*, 7 Moore P. C. 286. *Hart* v. *Western Railroad Co.* 13 Met. 99. In marine insurance, a valid abandonment for a total loss has the like effect in this respect as payment of the loss, and vests in the underwriters, from the time of the loss, the interest of the assured in any right to be compensated for the loss by any other party. Familiar instances of the application of this principle are to be found in cases of the seizure of a vessel by a foreign government, whether the compensation is obtained under letters of marque and reprisal, or under the award of commissioners appointed by treaty; of the negligent injury of a vessel by collision; and of general average. *Randal* v. *Cockran*, 1 Ves. Sen. 98. *Blaauwpot* v. *Da Costa*, 1 Eden, 130. *Comegys* v. *Vasse*, 1 Pet. 193. *Mercantile Insurance Co.* v. *Corcoran*, 1 Gray, 75. *Yates* v. *Whyte*, 5 Scott, 640; *S. C.* 4 Bing. N. C. 282. *White* v. *Dobinson*, 14 Sim. 273. *North of England Insurance Association* v. *Armstrong*, Law Rep. 5 Q. B. 244. *Dickenson* v. *Jardine*, Law Rep. 3 C. P. 639. *Lord* v. *Neptune Insurance Co.* 10 Gray, 126.

It does not, however, follow that abandonment and payment for a total loss will defeat the right of the assured to sue in his own name, or will authorize the underwriters to sue in their name, in trover for a tort already committed. An action of trover is not brought to recover the property itself, but damages for its conversion. The right to bring it is a personal right of action, accruing to the owner at the time of the conversion. The measure of damages is the value of the property at that time, with interest thereon. A subsequent return of the property to the owner will not defeat the right of action, but only mitigate the damages so far as he has received the benefit of the property. *Vandrink* v. *Archer*, 1 Leon. 221, 223. *Murray* v. *Burling*, 10 Johns. 172. *Chamberlin* v. *Shaw* 18 Pick. 278. *Johnson* v. *Sumner*, 1 Met. 172. *Lucas* v. *Trumbull*, 15 Gray, 306. A transfer of personal property from a rightful owner out of possession will doubtless pass the title, and enable the as-

signee, upon demand and refusal, to sue a wrongful holder in trover, as for a new conversion. *Carpenter* v. *Hale*, 8 Gray, 157. *Tome* v. *Dubois*, 6 Wallace, 548. But it does not destroy the right of action for the previous tort, nor, if the property has meanwhile been diminished in value by the act of the wrong-doer or otherwise, lessen the measure of his liability; nor can it, consistently with the rules of the common law, transfer a personal right of action for a tort, to one who, at the time of its commission, was not the party injured, so as to enable him to sue for that tort in his own name. *Gardner* v. *Adams*, 12 Wend. 297. *Day* v. *Whitney*, 1 Pick. 503. *Crain* v. *Paine*, 4 Cush. 483. To hold such a right of action to have been transferred, by relation to the time of the commission of the tort, would be to keep in abeyance the question against whom the wrong had been committed, to make that question depend upon the validity and effect of subsequent transactions in which the wrongdoer had no part, and to give him opportunity to escape before it could be determined in whose name an action should be brought.

The technical rules of law are adhered to, and the rights of all parties interested are preserved, by allowing the underwriters to maintain an action against the wrongdoer, in the name of the assured, if already commenced; or to bring such an action, in the same name, if not already brought. In either case, the action cannot be released by the assured, and a judgment in it will protect the defendant from further liability. This view is supported by the general current of the authorities.

It was held by Lord Mansfield and Justices Willes, Ashhurst and Buller, that insurers of a house destroyed by rioters might, upon paying the amount of the loss, bring an action against the hundred in the name of the assured; and by the opinion of Lord Mansfield and Mr. Justice Buller, against that of their two associates, but unanimously confirmed in the exchequer chamber, that the insurers could not maintain such an action in their own name. *Mason* v. *Sainsbury*, 3 Doug. 61. *London Assurance Co.* v. *Sainsbury*, Ib. 245. The right of the owner of the property to maintain an action against the hundred, after he had been paid the full amount of his loss by the insurers, was again

affirmed in *Clark* v. *Blything*, 3 D. & R. 489; *S. C.* 2 B. & C. 254. In *Hart* v. *Western Railroad Co.* 13 Met. 99, it was held by this court, that, upon payment by the insurers of a loss by fire communicated from the locomotive engines of a railroad corporation, the assured became a trustee for the insurers, and they might bring an action in his name against the railroad corporation, which he could not release. See also *Trask* v. *Hartford & New Haven Railroad Co.* 2 Allen, 331; *Mayor &c. of New York* v. *Stone*, 20 Wend. 139; *Rockingham Insurance Co.* v. *Bosher*, 39 Maine, 253; *Perrott* v. *Shearer*, 17 Mich. 48.

In the cases just cited from 3 Doug. and 13 Met., the right of a marine underwriter, in case of an abandonment, to maintain an action in the name of the assured against the parties liable for the loss, was recognized by Lord Mansfield and each of his associates, and by Chief Justice Shaw. Mr. Justice Buller peremptorily denied that an insurer could sue in his own name for the running down of the ship. 3 Doug. 251. And Lord Mansfield said : " There is no instance of an action in the name of an insurer, while numberless actions have been brought by owners of ships for damage done by other ships, where many of them must have been insured." Ib. 256. Mr. Justice Bayley, in 3 D. & R. 492, treated the law as settled that, in case of damage done to a ship, the owner might recover from the underwriters for his own benefit first, and afterwards sue the authors of the damage in his own name for the benefit of the underwriters. In *Yates* v. *Whyte*, 4 Bing. N. C. 282 ; *S. C.* 5 Scott, 640, the owner of a ship maintained an action in his own name against the owner of another ship, for the full amount of the damages occasioned by a collision, without deducting the amount paid to him by the underwriters ; and Chief Justice Tindal said : " If the plaintiff cannot recover, the wrongdoer pays nothing, and takes all the benefit of a policy of insurance, without paying the premium ;" or, according to the other report, " It would be monstrous to hold that the wrongdoer shall stand even in a better situation than the owner, by being permitted to take all the benefit of the policy, without having paid any premium." In *Dickenson* v. *Jardine*, Law Rep. 3 C. P. 644, Mr. Justice Willes

said that the underwriters, after paying in the first instance the amount claimed for general average, would then be entitled to use the name of the assured, and proceed against the other parties liable.

The only case cited for the defendant, which seems inconsistent with these authorities, is *Cammell* v. *Sewell*, 3 H. & N. 617. But that case, when carefully examined, is of little weight. It was an action of trover by the insurers of a cargo of deals. The ship was wrecked on the coast of Norway. The cargo was there sold by the master, by public auction, upon the recommendation of surveyors, but without necessity, and after the insurers had received notice of abandonment from the owner of the cargo, and, through an agent on the spot, had protested against the sale. After that sale, the insurers, who had at first refused to accept the abandonment, paid as for a total loss, and brought a suit to set aside the sale in a Norwegian court, which confirmed the sale. After the payment of the loss, the purchaser at that sale sent the cargo to the defendants at London, upon whom the plaintiffs on its arrival served a notice to deliver it up to them; notwithstanding which, it was sold by auction by the defendants for a much higher price than it had brought in Norway; and the damages sought to be recovered by the underwriters were the amount of the net proceeds of the last sale. Baron Martin, in delivering the judgment of the court of exchequer, said that, " upon the acceptance of the abandonment, its operation was retrospective, and the title of the plaintiffs to the deals had relation back to the time of the alleged loss;" (citing 2 Arnould on Insurance, 1178, and *Robinson* v. *United Insurance Co.* 1 Johns. 592;) " although it seems the point has never been directly decided in England;" and that " the plaintiffs therefore are the proper parties to maintain this action." 3 H. & N. 644. The materiality or significance of the first part of this statement is not easily appreciated. The conversion for which the plaintiffs sued was not the sale in Norway, but the sale in London, with notice of their claim, after they had accepted the abandonment and paid as for a total loss, and thus, according to a decision of the house of lords nearly ten years before,

clearly acquired the title in he cargo, and the right to sue any one who, without better title, withheld it from them. *Stewart* v. *Greenock Insurance Co.* 2 H. L. Cas. 159; *S. C.* 1 Macq. 328. See also *Lord* v. *Neptune Insurance Co.* 10 Gray, 121 *& seq.* Although the plaintiffs' counsel said that it would be urged that the action could not be maintained in the name of the underwriters, no such objection appears by the report to have been made or argued for the defendants, and the opinion of the court upon this point speaks of the argument for the plaintiffs only. If the point arose in the case, and was argued by counsel, it was clearly not necessary to the decision; for that was in favor of the defendants, upon the ground that the judgment of the Norwegian court was conclusive, in the nature of a judgment *in rem.* The judgment of the court of exchequer was affirmed in the exchequer chamber, without passing upon either of these points, upon still another ground, that, by the law of Norway, the master's sale, though unauthorized, passed a good title to a *bonâ fide* purchaser. *Cammell* v. *Sewell,* 5 H. & N. 728. And the case of *Robinson* v. *United Insurance Co.* 1 Johns. 592; *S. C.* 2 Caines, 280; cited by the learned baron, was trover brought by the underwriters, not against a third person, but against the assured himself, for goods which had passed by the abandonment, and which he had refused to give up.

The other cases cited for the defendant do not touch the question of the right of insurers to maintain an action of tort in their own name at common law to recover damages, the right to which had accrued to the assured before the abandonment. *The Sarah Ann,* 2 Sumner, 206, was upon a libel *in rem* in admiralty, brought by the insurers after abandonment and payment of the loss and an express assignment by the assured of all their rights to the insurers. *Rogers* v. *Hosack,* 18 Wend. 319, was a bill in equity for the distribution of a fund in the hands of an executor, arising out of the collection of a claim against a foreign government for the destruction of the property insured. The cases of *Quebec Assurance Co.* v. *St. Louis,* 7 Moore P. C. 286, *Mellon* v. *Bucks,* 17 Martin, 371, and *Hooper* v *Whitney,* 19 Louisiana, 267, were decided under the rules of the

French or civil law, prevailing in Canada and Louisiana.    The remaining cases cited * related to rights as between underwriters and assured, in suits between them, to ship, goods or freight.

The result is, that, allowing to the abandonment made by the plaintiffs, and the recovery and payment of a total loss, the full effect, for which the defendant contends, of an abandonment by an absolute owner and payment of a total loss to him, they did not defeat the right to bring an action at law in the name of the plaintiffs for the tort previously committed against them.    The question whether the damages recovered will belong to them or to the insurers is a question in which the defendant has no interest, and which is not now in issue.

*Exceptions overruled.*

---

* *Houstman* v. *Thornton*, Holt N. P. 242.    *Roux* v. *Salvador*, 3 Bing. N. C. 266.    *Davidson* v. *Case*, 8 Price, 542.    *Coolidge* v. *Gloucester Insurance Co.* 15 Mass. 346.    *Chesapeake Insurance Co.* v. *Stark*, 6 Cranch, 268.    *Columbian Insurance Co.* v. *Ashby*, 4 Pet. 139.    *Mutual Safety Insurance Co.* v. *Cargo of the Brig George*, Olcott, 89.    *Union Insurance Co.* v. *Burrell*, Anthon, 128.    *Schieffelin* v. *New York Insurance Co.* 9 Johns. 26.    *Evans* v. *Ingersol*, 15 Ohio State, 292.