Sᴜɴ Mᴜᴛᴜᴀʟ Iɴsᴜʀᴀɴᴄᴇ Cᴏᴍᴘᴀɴʏ *vs.* Jᴏʜɴ G. Hᴀʟʟ & another.

An abandonment of insured property to the insurers relates back from the time of their acceptance of it to the time of the loss, and enables them to sue in their own name for the property or its proceeds.

The master of a vessel, whose damaged cargo was sold in a port of distress, transmitted the proceeds, with directions to hold them to his credit, to a creditor of the owners of the vessel, who were not the owners of the cargo; and the creditor received them with notice that they belonged to the owners of the cargo, but nevertheless credited them upon the debt owing to him. Insurers of the cargo, who had accepted an abandonment and paid its owners as for a total loss, then sued the owners of the vessel for said proceeds and summoned the creditor as trustee; and before judgment in the trustee process, never having intended to confirm his appropriation of them, they brought suit for them directly against him, he having meanwhile made no change in his position in the matter. *Held*, that the pendency of the first suit was no bar to the prosecution of the second.

Cᴏɴᴛʀᴀᴄᴛ for the proceeds of a draft. At the trial in the superior court, before *Lord*, J., without a jury, it appeared that the plaintiffs were insurers of a cargo of sugar shipped on the schooner Minnie Arnold from Havana for New York in November 1868, and owned by Wylie, Knevals & Company of the latter city; that the schooner, being disabled on the voyage, put into St. Thomas on January 1, 1869, and the cargo, being damaged, was sold by recommendation of a board of survey, for the benefit of whom it might concern; that on February 23, Wylie, Knevals & Company, upon receiving a letter from the master informing them of the loss, made an abandonment to the plaintiffs, who paid them for a total loss in four instalments, on February 24, March 9, March 20, and April 7; that part of the proceeds of the sale was spent by the master in St. Thomas in repairs on the schooner and otherwise, and the draft was purchased with the balance and sent by him to the defendants in Boston, who received it March 8, accompanied with a letter in which he wrote "It is likely, should I not succeed in obtaining a paying freight, that I will proceed to Turk's Island for a cargo of salt on vessel's account, with which I intend to proceed to your port; you will in the mean time have

the adjustment made out against my arrival, holding the amount herein remitted to my credit. You will of course act for the interest of the vessel in my absence as regards the freight, &c. ; " that, about the same time, the defendants received from the master accounts, protests and papers, which they handed to an average adjuster, who prepared from them a general average statement, dated April 29; and that, after paying the adjuster's fees, they placed the balance of the proceeds of the draft to the credit of the owner of the schooner, who was indebted to them at the time.

It further appeared that the plaintiffs commenced a suit against the owner of the vessel, summoning these defendants as his trustees, by writ dated April 26, entered at the same term with the present action, and now pending, with a declaration containing two counts for money expended at St. Thomas in repairing the schooner, and a third count for the entire sum which appeared by the average adjustment to be due to the plaintiffs from the sale of the sugar. The adjuster's fee was also charged in the general average adjustment, a copy of which was put in evidence by the plaintiffs.

" The judge found, on all the evidence, that the plaintiffs had not intended to confirm any appropriation made by the defendants of said proceeds on their books, or to waive any right of action against the defendants. It appeared that no motion had been made for an order of notice to the principal defendant named in said writ, who resided in Nova Scotia, and upon whom no personal service had been made, or to charge the defendants as his trustees for the amount of the draft, of which their answer disclosed their receipt, together with their appropriation of the proceeds of it, accompanied by a denial of any other fund. The defendants testified that they made no change in their position in the matter between the service of the two writs. The judge found, as matters of fact, that the defendants received the draft with notice that it belonged to the owners of the cargo; that the general average adjustment was procured for the purpose of enabling the owner of the vessel to make a claim for a partial loss upon the insurers of the vessel; that the defendants

had sent it to the owner; and that the plaintiffs had no interest in having it made and derived no benefit from it."

It also appeared "that the defendants had had a business connection for about a year with the schooner; had furnished her with supplies, secured a cargo, procured insurance on the same, and acted as the general agents of the schooner when she came to Boston; that they had for four years acted as consignees, and furnished supplies for vessels belonging to the owner of the schooner; that they received a letter from Wylie, Knevals & Company inquiring about the schooner, which they answered February 24, 1869, stating that they had received no intelligence concerning any disaster to her; that they never afterwards made any communication on the subject to Wylie, Knevals & Company, or to the plaintiffs; and that the plaintiffs, before commencing this action, made a demand on them for the proceeds of the draft."

The defendants requested the judge to rule, "that the suit should have been commenced in the name of Wylie, Knevals & Company, and not in that of the plaintiffs; that the suit by the plaintiffs against the owner of the vessel, in which these defendants were summoned as trustees, was a waiver in law of any right to maintain the present action, and a confirmation in law of the appropriation by the defendants of the proceeds of the draft to the credit of the owner of the vessel; and that the plaintiffs could not in any event recover more than the balance remaining after deducting from the proceeds of the draft the amount due to the defendants from the owner of the schooner." The judge refused so to rule; the verdict was for the plaintiffs; and the defendants alleged exceptions.

*C. S. Lincoln,* for the defendants.

*L. S. Dabney,* (*R. H. Dana, Jr.,* with him,) for the plaintiffs.

CHAPMAN, C. J. The abandonment, from the time it was accepted, related back to the time of the loss, and put the insurers in place of the owners. 2 Phil. Ins. § 1708. *Clark* v. *Wilson,* 103 Mass. 219. The master of the vessel, in the discharge of his duties to all parties interested, had purchased the draft in question with the proceeds of the cargo and sent it to the de-

fendants, who had notice that it was the property of the plaintiffs. They ought to have sent the draft or its proceeds to the plaintiffs, whose property it was; or to Wylie, Knevals & Company, who would have received it for the plaintiffs. But this action should not have been brought by Wylie, Knevals & Company, for they had no right to the proceeds as against the plaintiffs. It is properly brought in the name of the plaintiffs, who were the owners of the draft and its proceeds.

The action of the plaintiffs against the owner of the vessel, in which they summoned these defendants as trustees, is no waiver of the plaintiffs' rights, as against the defendants. No judgment has been rendered in it; there was no intention on the part of the plaintiffs to confirm the appropriation of their funds which the defendants had made; and no change has been caused by it in the position of the defendants. There is no principle upon which this action can be barred by the proceeding.

The plaintiffs are entitled to recover, upon the facts found by the judge, the whole proceeds of the draft and interest.

*Exceptions overruled.*