## ANDERSON *v.* MILLER.

### (*Nashville.* January 17, 1896.)

1. ACTIONS. *Maintainable for wrongful destruction of property by owner who has been compensated by insurance.*

    An action for the wrongful destruction of property can be maintained by the owner and in his own name, although he has been fully compensated for his loss by an insurer who may be entitled, by subrogation, to the recovery. (*Post, pp. 36–43.*)

    Cases cited and approved: 17 Mich., 48; 103 Mass., 219; 105 Mass., 213; 35 N. J. L., 409; 4 Bing. N. R., 272; 13 Met., 99; 45 Maine, 453; 16 Pet., 501; 2 Barn. & Cress., 254; 21 Pa., 518; 17 N. Y., 428; 6 C. E. Green, 107; 51 Ill., 410; 52 Ill., 442; 38 Barb., 574.

2. MEASURE OF DAMAGES. *For negligent injury of buildings.*

    In an action for the negligent destruction or injury of buildings it is not error to charge that the owner is entitled to recover, as damages, such sum as will be sufficient to replace the buildings destroyed or injured by others of equal value, taking their age and depreciation into consideration. (*Post, pp. 43, 44.*)

3. PROXIMATE CAUSE. *What is.*

    The proximate cause of the destruction of a leased building, in which the tenant has stored cotton, in violation of the rental contract, is not the fire which consumes it, but the tenant's wrongful act in storing the cotton therein, where it appears that the fire, which had originated elsewhere, would not have invaded the leased premises or caused any injury thereto but for the presence of the cotton. (*Post, pp. 44–48.*)

    Cases cited and approved: Deming *v.* The Cotton Press Co., 90 Tenn., 353; Railroad *v.* Kelly, 91 Tenn., 699; Postal Tel. Co. *v.* Zopfi, 93 Tenn., 374.

4. LANDLORD AND TENANT. *Tenant's rights.*

    A tenant's rights in the leased premises are measured by those of the landlord, and cannot exceed them. (*Post, pp. 48, 49.*)

Cases cited and approved: Smith *v.* Street Railroad, 87 Tenn., 636; Railroad *v.* Bingham, 87 Tenn., 523.

---

FROM DAVIDSON.

---

Appeal in error from Second Circuit Court of Davidson County. CLAUDE WALLER, J.

R. L. MORRIS for Anderson.

STEGER, WASHINGTON & JACKSON for Grantland:

NOLEN & SLEMONS and HENDERSON & EGGLESTON for Miller.

WILKES, J.   This is an action for damages growing out of a fire upon premises belonging to plaintiffs, Miller and wife, but occupied by Anderson, and by Grantland as lessee or tenant under Anderson. The cause was tried before the Court and jury, and judgment rendered for plaintiffs for $1,700, and defendants have appealed and assigned errors.

It appears that Anderson and Mrs. Miller owned adjoining stores, or business houses, in Nashville, the buildings being only a few inches apart, the roofs coming down together, and being drained by the same gutter. In August, 1891, Anderson, being pressed for room in his building, rented Mrs. Miller's building, or a part of it, from her agent,

for the purpose of storing his buggies and carriages on the first floor. It is a matter of some controversy whether he was to have the use of the basement and second story, or only the first, and this question was submitted to the jury under a proper charge. However this may be, he subrented to Grantland the basement and second story for the storage of cotton, and it was occupied by him for this purpose from November, 1891, to February 24, 1892, so far as the record discloses, without the plaintiff's knowledge. At that date a fire originated in Anderson's house, or factory, completely destroying it, as well as the roof and part of the second story floor and the rear windows and frames of Mrs. Miller's house. Mrs. Miller's building was fully insured, and she collected from the insurance company $2,420, in full of her loss. She used $1,980.50 of this amount to repair her building, making it as valuable as before the fire. She then sued Anderson and Grantland, averring that Anderson only rented the first story of her building for storing buggies, etc., and he and Grantland had wrongfully taken possession of the second story, and permitted cotton to be stored therein, by reason of which fact fire was conveyed into the second story from the Anderson building and burned the floor and roof, and made it difficult and wellnigh impossible to extinguish the fire, so that the floor and roof were destroyed.

A separate count admits the rightful possession of

the second story, but alleges that cotton, a highly inflammable substance, was stored therein, contrary to express agreement. Several pleas were filed, both general and special. Among the latter it was set up that plaintiff had been already paid the full value of her house by the insurance company, and that the insurance company was subrogated to all of plaintiff's rights of action. These pleas were, on motion, stricken out as insufficient, and this is assigned as error. It is also assigned as error that the trial Judge committed an error in his charge to the jury, which will be fully considered hereafter. It is also assigned as error that the Court charged that the measure of damages was the reasonable cost of restoring the property to its former condition. Other errors are assigned, which are not material, and need not be specially considered, except that the Court charged the jury that the rights of Grantland were measured by those of Anderson, because it was through him he occupied the premises.

In regard to the proper parties to the action, we do not think the assignment well taken. If it be conceded that the insurance company, having paid the entire fire loss, is now entitled to be subrogated to the rights of the insured as against the tort feasor, or to recover back from him the amount he recovers, still it does not prevent a recovery in the name of the insured for the damage sustained. The question of who will be entitled to the proceeds of the recovery, the insurer or the insured, is a mat-

ter between them, and constitutes no defense to an action for the damages caused by the wrong which, in any event, must be brought in the name of the ·owner and insured, although it might be for the use of the insurer. Am. & Eng. Enc. L., Vol. 24, pp. 308, 309, 310; *Perrott* v. *Shearer*, 17 Mich., 48, 55, 56; *Clark* v. *Wilson*, 103 Mass., 219, 227; *Haywood* v. *Cain*, 105 Mass., 213; *Webber* v. *Morris & Essex R. R. Co.*, 35 N. J. L., 409; *Mason* v. *Sainsberry*, 3 Doug., 61; *Yates* v. *Whyte*, 4 Bing. N. R., 272; *Hart* v. *Western R. R. Co.*, 13 Met., 99; *Concord M. Fire Ins. Co.* v. *Woodbury*, 45 Me., 453; *Carpenter* v. *Provident Ins. Co.*, 16 Pet., 501; *Insurance Co.* v. *Updegraff*, 21 Pa., 518; *Kernochan* v. *N. Y. Fire Ins. Co.*, 17 N. Y., 428; 51 Ill., 410; 52 Ill., 442.

In *Perrott* v. *Shearer*, 17 Mich., p. 48, the defendant, a Sheriff, wrongfully levied on goods, the property of the plaintiff, assignee. The assignee had insured said goods, and they were destroyed while in possession of defendant, Sheriff. In an action to recover the value of the goods, the defendant pleaded that the plaintiff had been paid value of same by insurance company. Cooley, Judge, delivered the opinion of the Court, and said: "He, the defendant, is found to be a wrongdoer in seizing the goods, and he cannot relieve himself from responsibility to account for their full value, except by restoring them. He has no concern with any contract the plaintiff may have with any other party in regard to the

goods, and his rights or liabilities can neither be increased nor diminished by the fact that such a contract exists. He has no equities as against the plaintiff which can entitle him, under any circumstances, to an assignment of the plaintiff's policies of insurance. The accidental destruction of the goods in his hands was one of the risks he run when the trespass was committed, and we do not see how the law can relieve him from the consequences. If the owner, under such circumstances, keeps his interest insured he cannot be held to pay the money expended for that purpose for the interest of the trespasser. He already has a right of action for the full value of the goods, and he does not give that away by taking a contract of insurance. For the latter he pays an equivalent in the premium, and is, therefore, entitled to the benefit of it, if any benefit shall result. The trespasser pays nothing for it, and is, therefore, justly entitled to no return. The case, we think, is within the principle of *Merrick* v. *Brainard*, 38 Barb., 574, which appears to us to have been correctly decided. The plaintiff recovers of the defendant for the wrong that has been done him in taking his goods, and he recovers of the insurance company a large sum for a small outlay, because such payment was the risk they assumed, and for which they were fully compensated. It is not a question of importance in this inquiry, whether the act of the defendant caused the loss or not, his equitable claim to a reduction of damages,

if he could have any, would spring from the fact that the plaintiff recovers pay for his property twice; but the answer to this is, that he recovers but once for the wrong done him, and he receives the insurance money upon a contract to which the defendant is in no way privy, and in respect to which his own wrongful act can give him no equities." *Perrott* v. *Shearer*, 17 Mich. Rep., pp. 55, 56.

*Clark* v. *Wilson*, 103 Mass., 219, was an action for wrongful conversion of a boat. Plaintiff had received from insurance company full value of vessel, but sued the defendant for conversion. It was pleaded that plaintiff had received from insurance company full value of the vessel, and that therefore the right of action, if any, was in the insurance company. The Court said: "The result is that, allowing to the abandonment made by the plaintiffs and the recovery and payment of a total loss, the full effect, for which the defendant contends, of an abandonment by an absolute owner and payment of a total loss to him, that did not defeat the right to bring an action at law in the name of the plaintiffs for the tort previously committed against them. The question whether the damages recovered will belong to them or to the insurers is a question in which the defendant has no interest, and which is not now in issue." *Clark* v. *Wilson*, 103 Mass., p. 227.

*Webber* v. *Morris & Essex Railroad Co.*, 35 New Jersey Law, was an action of insured against railroad company for the benefit of insurance company, the

insurance company having paid the amount of loss.
The Court said: "Notwithstanding such payment, an
action will lie by the insured against the railroad
company. The insurance is to be treated as a mere
indemnity, and the insured and insurer regarded as
one person. Therefore, payment by the insurer be-
fore suit brought, cannot affect the right of action."

In *Mason* v. *Sainsbury*, reported in 3 Douglass,
61, suit was brought on the riot act, to recover
damages for the demolition of a house in the riots
of 1780. The property having been insured in a
fire office, which paid the loss, the action was in
the name of the insured, and for the benefit of
the insurance office. Lord Mansfield held that pay-
ment by the insurer was not in ease of the hun-
dred, and not as co-obligors, and that the case must
be considered as if not a farthing had been paid.
"He likened it to the case of abandonment in marine
insurance, where the insurer is constantly put in the
place of the insured."

Chief Justice Abbott, in citing the case of *Ma-
son* v. *Sainsbury* in *Clark* v. *The Inhabitants of
the Hundred of Blything*, 2 Barn. & Cress., 254,
says he could not entertain any doubt of its pro-
priety, and he held that, where the owner of cer-
tain stacks of hay and corn, which were maliciously
set on fire, received the amount of his loss from
the insurance office, he might, nevertheless, maintain
his action against the hundred.

In *Yates* v. *Whyte*, 4 Bing. N. R., 272, which

was the case of a collision at sea, the plaintiff re-
covered his whole loss, notwithstanding his prior re-
recovery of a portion of it from the underwriters,
the Court saying that the plaintiff would hold in
trust for the underwriters such portion as they had
paid him.

These cases are referred to, and their authority
recognized, by Chief Justice Shaw in *Hart* v. *The
Western Railroad Co.*, 13 Met., 99; and in the
*Monmouth Fire Insurance Co.* v. *Hutchinson*, 6 C.
E. Green, 107, this rule is said to be settled.
*Webber* v. *Morris & Essex Railroad Co.*, 35 N. J.
Law., p. 413.

*Hayward* v. *Cain*, 105 Mass., 213, was an ac-
tion by insured against the defendant for maliciously
setting fire to plaintiff's building. The plaintiff re-
ceived the amount of damages from the insurance
company. The Court said: "The transaction between
the insurers and the owners of the property injured
were matters in which the wrongdoer had no con-
cern, and which do not affect the measure of his
liability."

In regard to the measure of damages, the charge
of the Court was correct in directing the jury that
it would be the reasonable cost of restoring the
property to its former condition. This does not
mean, as argued by counsel, that it was the cost
of a new building, the same as that destroyed, and
the jury could not have so understood it, but the
proper construction was that the building, as re-

stored, should be of equal value to that destroyed, taking age and depreciation into consideration. In other words, to reinstate plaintiff as before the fire. The jury was told, in express terms, that no recovery could be had if Anderson rented the entire building, or had permission to store cotton therein, or that such storage was the ordinary and usual use of the building.

The only other question material to be considered is whether the act of the defendants in storing the cotton in the house was the proximate cause of the loss, and whether the charge of the Court upon this point was misleading or not. It is insisted that the proximate cause was the fire which originated on Anderson's premises, and, no negligence of defendants being shown in connection therewith, defendants would not be liable. On the other hand, it is insisted that this fire would not have communicated to plaintiff's house but for the cotton stored therein, and hence this storage was the proximate cause of plaintiff's loss, and not the fire originating elsewhere. The definitions of proximate cause are easily given in general terms, but they are very difficult in practical application to the facts of each particular case. There is, however, a marked distinction between the proximate cause of an accident and the proximate cause of the injury resulting from the accident. This is illustrated in the case of *Deming* v. *The Cotton Compress Co.*, 6 Pickle, 353, in which the Court said: "It is true the fire destroyed the cot-

ton, and in that sense caused the loss, but it appears that, notwithstanding the occurrence of the fire, the cotton would not have been burned by it had not the breaking of the train happened while it was being removed, so that, but for this fact, the cotton would have been saved. This (the breaking of the train) must therefore be held to be the proximate cause of the loss, and, if it was the result of negligence, the carrier must answer for it."

In *Railroad* v. *Kelly*, 7 Pickle, goods were consumed by fire which was not the result of defendant's negligence, but the goods would never have become exposed to the fire but for the negligent failure and refusal to deliver the goods on demand previous to the fire, so that, while the fire caused the loss, the failure to deliver caused the injury.

In *Postal Tel. Co.* v. *Zopfi*, 9 Pickle, 374, the same distinction is illustrated where the fall of a young girl was caused by the slippery condition of a walkway, but the injury proximately resulted from the telegraph company negligently leaving its pole where she fell upon it, and received an injury which would not have resulted but for the presence of the pole, even though she had fallen. In that cause a hypothetical case is put to further illustrate the distinction of a person falling upon an ice-covered pavement into an open cellar. In such case the ice is the cause of the fall, but the open cellar may cause an injury which, but for it, would not have occurred. This case collates many authorities recog-

nizing and enforcing the same distinction. *Postal Tel. Co.* v. *Zopfi,* 9 Pickle, 375.

With this distinction in view, the question of liability of defendants· is easily solved. The jury were properly instructed in regard to Anderson's rights under his rental agreement; that if he rented the premises with the understanding that he might store cotton in them, or such storage was a reasonably safe use of the premises, attended with no more danger than the purposes to which he intended to put them, then the defendants would not be liable, but if the storing of cotton was a more dangerous use than the storing of vehicles, for which he rented the premises, or if he occupied the premises without authority for any purpose, then he would be liable for the injury which resulted. The jury evidently found this contention unfavorably to Mr. Anderson, and the record justifies and warrants such finding.

The only question remaining is, did this unauthorized storage of cotton on the premises proximately cause the injury? The Court instructed the jury that "if they found the fire was not communicated to plaintiff's house by the cotton, but that the inflammable nature thereof prevented the firemen from being able to extinguish the fire, and that it could have been extinguished but for the presence of this cotton, with little or no damage to the property, then the plaintiffs are entitled to recover

such damages as immediately and proximately re-
sulted therefrom.''

In connection with this he further said: '' If you
find that the cotton was the proximate cause of the
burning of the plaintiff's house, in being the means
without which the fire would never have been com-
municated to plaintiff's house, then plaintiff can re-
cover. On the other hand, if you find that the
cotton did not, in the first instance, communicate the
fire to plaintiff's building, and that it was not the
proximate cause of the burning of the house, and
if you further find that it did not operate as the
efficient cause which prevented the firemen from ex-
tinguishing the fire in time to save the building,
but simply intensified the flame and smoke of the
burning building, or if you find that substantially
the same damage would have resulted to plaintiff's
property, even though there had been no cotton
stored therein, then plaintiff cannot recover for any
damage to the building on account of said fire. So,
if the fire accidentally originated in the adjacent
building, and this accidental fire was the proximate
cause of the injury to plaintiff's building, then
plaintiff cannot recover therefor. By proximate
cause, as used in the foregoing instructions to you,
and as elsewhere used in this charge, is meant
the efficient controlling event or act that produced
the injury, the act or event which, without any in-
tervening cause, brought about the injury complained
of.''

This charge is altogether fair and favorable to the defendants. We think the Court might even have said that, if defendants had put their premises to an unauthorized use by storing inflammable material therein, then they would have been liable for a fire, no matter when or how originating, if it communicated to the building by reason of the presence of such material, and would not have communicated with or injured the building but for the presence of the inflammable, unauthorized material stored.

Here the wrong consisted, and the injury resulted from the storage (unauthorized) of inflammable material, when it was liable to be reached by a fire, no matter when or how originating in adjoining premises, and which would have been harmless to this building but for the unauthorized presence of this inflammable material. The principle would have been the same if benzine, naphtha, gunpowder, or other easily inflammable or combustible material had been stored, without permission, where it could be reached by a fire which would not have communicated with other less inflammable material, or could have been more easily controlled or prevented.

The Court charged the jury that the rights of Mr. Grantland were to be measured by those of Anderson, because it was through him that he occupied the premises. This is correct, and the jury no doubt understood that his liability, as well as his right, was commensurate with that of Anderson, so far as plaintiffs were concerned. Although Mr.

Grantland may have rented in good faith, believing that Anderson had the right to sublet to him, still the fact remains that he, as well as Anderson, was a trespasser and wrongdoer, and Anderson could no more authorize Grantland to put the premises to an unwarranted use than he could put them to such use himself, and both stand upon the same ground of liability to the plaintiff. *Smith* v. *The Street Railroad*, 3 Pick., 636; *Railroad* v. *Bingham*, 3 Pick., 523.

We find no reversible error in the record, and the judgment of the Court below is affirmed, with costs.