By the Court,

Nelson, Ch. J.
The principle question involved in this case, turns upon a construction of the 81st section of the act relating to the city of New York (2 R. L. 368). This act was originally passed 2d April, 1806, and as is said, soon after a destructive, fire had occurred in the city, when the inconvenience of the want of the authority conferred by it upon the magistrates, was probably severely felt.
The section provides, that when any building shall be on fire, it shall be *165 lawful for the mayor, or in' his absence, the recorder, with the concurrence of two aldermen, to direct the same, or, any other building \\ hich they may deem hazardous and likely to take tire, or to convey the fire to other buildings to Ik pulled down; and upon application of any person interested in such building, to the mayor, &c., it shall be their duty to issue a precept for a jury to inquire of and assess-the damages which the owners of such building, and all persons having any estate or interest therein have respectively sustained by the pulling down or destroying thereof. And after providing the mode of proceeding, the statute proceeds, “ and the said inquiry and assessment having been confirmed, &c., the sums assessed, &c., shall be paid, &c., in full satisfaction of all demands of such persons respectively, by reason of the pulling down or destroying such building.” The 83d section provides, that the assessment for any building pulled down or destroyed, together with the expenses thereof, shall be borne by the corporation of the city. The question is, W’hether the statute, upon a sound construction, authorizes the assessment of damages for the loss of merchandise and other personal property belonging to the owners, or persons interested, contained in the building pulled down and destroyed. It is contended, on behalf of the corporation, [290] that these damages should be limited to the injury done to the building.
It may be observed, preliminarily, that as it was competent for the legislature to vest the magistrates with the authority conferred, the individual whose property has been destroyed in the exercise of it, must be confined to the remedy here prescribed. Besides,- the section expressly declares the assessment shall be in full satisfaction of all demands, by reason of the destruction of the building.
No doubt, at common law, any person, in case of actual necessity to prevent the spreading of a fire, might prostrate a building in a block or street, without being responsible in trespass or otherwise. No legal redress existed for the injury though the sufferer might have been thereby ruined. This was so resolved, among other things, in the salpetre case by all the justices, in the reign cf King James (12 Co. 13). “ For the commonwealth, a man shall suffer damage; as for saving a city or town, a house shall be plucked down, if the next be on fire; and a thing for the commonwealth every man may do without being liable to an action.” The same principle was afterwards adjudged in Moses case, p. 63. That was an action of trespass against the defendant, a passenger in a barge for throwing out the goods of the plaintiff in a storm. It was resolved by the whole court, that in a case of necessity to save the lives of the passengers, it was lawful for the defendant to cast the goods out of the barge—that if the danger happened by the act of God, as by tempest, every one ought to bear his loss for the safeguard and life of man. The case of pulling down a house in time of fire is referred to as an act done for the public good (see also Dyer, 36; 15 Vin. tit. Necessity, pl. 8; Bacon, Elem. 27, 28; 2 Kent's Comm. 338), But conceding this to be a well settled common law principle, I apprehend it will not afford much aid in the construction of the statute. The cases stand upon totally different ground. The one presents a question of responsibility by a citizen acting under the influence of an overruling, necessity solely for the public good; the decision turning not so much upon the want of [291] merit in the claim for redress, as upon the injustice of making the defendant liable who had thus acted for the benefit of the public. The other, the case upon the statute, is a question between the sufferer and the city, for whose benefit his property has been sacrified. where the authorities of the city are empowered to determine at discretion when and under what circumstances, it shall be thus sacrificed. Whatever difference of opinion, therefore may exist as to the true construction of the statute, there Can not, *166 I think, bo any, as to the equity and justice of the claim, against the city. It rests upon the great fundamental principie, and which is now incorporated into our constitution, that private property shall not betaken for public use, without just compensation. It was said, on the argument by the counsel for the city, that the statute did not stand upon this principle, inasmuch as no damages were recoverable at common law; this, indeed, was particularly urged to justify the limited interpretation for which they contended. But the obvious answer is, that in all cases of the kind, the individual concerned in the taking or destroying of the property is not personally liable. If the public necessity in fact exists, the act is lawful. Thus, houses may be pulled down, or bulwarks raised for the preservation and defence of the country, without subjecting the persons concerned to an action, the same as pulling down houses in time of fire; and yet these are common cases where the sufferers would be entitled to compensation from the national government within the constitutional principle ( Const. U. S. Art. 5, of the Amendments).
In all the cases in the books denying the remedy at common law, it is admitted the party may justly claim satisfaction from the public. Thus, in the saltpetre case, the justices say, that “ after the danger is over, the trenches and bulwarks ought to be removed, so that the owner shall not have prejudice in his inheritance; ” and in The Governor, Sec., of the Cast Plate Manufacturers v. Meredith (4 T. R. 797), Buller, J., remarks, “ the civil law writers indeed say, that the individuals who suffer have a right to resort to the public for satisfaction; but no one ever thought that the [292] common law gave an action against the individual who pulled down the house, &c.; this is one of those cases to which the maxim applies salus populi, est suprema lex. Whether the case under consideration comes exactly within the 7th article of our constitution, so as to make it imperative upon the legislature to provide a compensation or not, is a question not material to the view I have taken. Perhaps it does not; but it is clearly within the spirit and reason of the principle. The very ground upon which a private person is exempt from liability at common law, proves this; it is because the act was done for the public good; as in this case, the property was destroyed for the benefit of the city at large. Assuming, then, as I think, I have shown we may, that the property in question of D. N. Lord has been destroyed for the use and benefit of the city, and that in reason and justice he is entitled to a full compensation from its common funds, let us examine the statute and see how far the provisions for that purpose extend. They are remedial and must be liberally expounded.
The first section on this subject provides for the destruction of a building on fire, or hazardous and likely to take fire, or to convey it to other buildings; and then, a compensation for the damages which the owners or others interested in these buildings have sustained, by reason of such destruction. What damages are here intended? Those only, it is contended, on the part of the city, arising from the loss of the building itself. This may be far short of the damages actually sustained, as is strikingly exemplified in this case. The building was valued at $9,580, the contents at upwards of $250,000. The loss of Rufus L. Lord, the owner of the fee in the building, was assessed at $7.168-50, whilst the loss of David N. Lord, the tenant, was assessed at $156,274-80. All this must have been well understood by the framers of the law, as the value of the buildings in many parts of the city is trifling compared with the value of the contents; and of course, that such a rule of compensation in many cases, would be a mere mockery of justice. The more reasonable and just construction would seem to be, that the [293] legislature intended to denote by the terms damages which the owners had sustained, a compensation commensurate with the injury occasioned by the act authorized to be done. The words, “ owners of such *167 buildings, and all persons having any estate or interest therein,’’ do not necessarily conflict with this view; they may be fully satisfied by considering them as used to designate the persons entitled to claim damages, and not for the purp.ose of restraining the assessment to the damage done to the building itself, The jury are to assess the damages, be they more or less, which these persons have sustained by the authorized destruction of the building. Damages have a legal signification, and are peculiarly appropriate to express an intention to give full indemnity. These arp defined to be a compensation given by a jury for an injury or a wrong done the party before the action brought (Co. Litt. 257; 2 Bac. tit. Damages, 263). The legal measure of which is the amount of the loss necessarily or naturally resulting from the act.
Again: The damages assessed by the jury are to be paid by the corpora tion, ‘ ‘ in full satisfaction of all demands of such persons respectively by reason of the pulling down or destroying such building.” “ All demands,” here, obviously signify all the loss or injury which the party has sustained by the destruction of his building, within the judgment of the law. As was pertinently remarked by one of the learned judges below, the very terms used, “ by reason of such destruction,” embrace all direct consequential damages; and the extensive signification of the words, “ all demands,” must include every loss that is sustained by the person who was intended to be relieved.” It certainly can not be denied, that the loss of the personal pro perty happened “ by reason of” the destruction of the building. The demand for compensation, therefore, stands upon the same legal principle as that for the injury to the building itself; both were the inevitable result of the execution of the order of the magistrates. There is not the semblance of distinction between them, and it would be doing violence to the intelligence and justice of the legislature, to make one by a forced construction of the statute. When they provided that the sums assessed should be [294] received “ in full satisfaction of all demands,” they must have supposed such an assessment had been directed as would cover all the damages resulting from the destruction of the building otherwise, we are compelled to believe they not only intended to give to the party a totally inadequate compensation for the injury, but to compel him to receive it in full satisfaction and discharge. This part of the section explains, if any explanation were necessary, the meaning of the foregoing direction, in respect to the assessment of the damages, and strengthens the view already taken, that the damages were intended to be commensurate with the whole of the injury sustained, whether direct or consequential. Upon any other view, they would not have been a full satisfaction of all demands; and if not so in fact, we can not believe the legislature would have deliberately made the payment of them thus conclusive upon the party.
Some minor considerations have been urged against the propriety of this construction of the statute, which I will briefly notice. It was said that no provision is made for compensation to persons whose goods are stored or deposited in the building, and who have no legal interest in it. Were we to concede this, it only proves that the legislature have omitted a very proper case for compensation; and that our interpretation, however liberal, may still be short of justice, in numerous cases of loss arising under the statute. The argument is not entitled to much weight, when urged to exclude a case from the benefit of the statute coming fairly within its provisions.
It was also said that personal property, contained in the building, is no where alluded to in the statute. That is true. But if the language used fairly includes it in the estimate of the damages, without special designation it is sufficient. The terms are general; buildings are authorized to be sud *168 denly pulled down, in extreme cases, for the safety of the city, and the damages sustained by the owners or persons interested are directed to be assessed; the measure of them is left to be regulated by the principles of law, which mete them out according to the injury necessarily or [295] naturally resulting from the act to the party. This is the just and universal rule in such cases.
I lay out of view all considerations of hardship which were urged in respect to the city. These are rarely to be indulged in the construction of a statute, but surely, when public officer's are authorized to sacrifice individual property for the protection and safety of the city—to stop the progress of a fire threatening to wrap it in flames—the plainest justice dictates full compensation in the private sufferer out of the common funds. No matter what may be the amount; it can not exceed the damage to the individual, nor contemplated benefit to the city. I have before answered the suggestion, that the individual was remediless at common law, and showed that the fact in no manner impaired, but rather' strengthened the claim against the city. The persons committing the damage are exempt from liability by that law, because the act was done for the benefit of the city.
The answer to the argument drawn from the language of the 83d section is, that it was intended thereby to prescribe, not the measure of the damages to be assessed, but the payment of them. And if it even apparently countenanced the limited construction contended for, which it does not, this should not be permitted to control the fair and legal import of the provision, expressly prescribing and regulating the assessment of the damages.
There is another important question arising upon the interpretation of this act, which it may be proper to notice. Though not material to the disposition of this case, other cases are depending, as is understood, in the court below, in which it may arise. The question is, whether the assessment of damages should include the value of all the property destroyed, or only for the destruction of that which might have hgeg_saved, if the magistrates had not interfered. "The learned judge who presided at the assessment, adopted the latter rule, and which, on the confirmation of the assessment, was approved by the court. This view of the statute, I am of opinion, is correct. It affords complete indemnity for the loss occasioned by the order, [296] and places the sufferer upon a footing witli all who may be involved in common calamity. If the building would have been inevitably destroyed by the flames, as if it was on fire, and beyond the hope of extinguishment when the order of the magistrates was given, it can not be correctly alleged that any damage, as it respects the building, was sustained by the pulling of it down. The party might still suffer damage, in respect to the contents, as the execution of the order might prevent the removal of all, or a portion of the goods that might be in the building. Besides, if the legislature had intended to make the value the measure of the damages, it would have been most natural to have directed the assessment of the value of the property destroyed, instead of the damages sustained by the act of destruction. The question may often be one of extreme difficulty, requiring nice discrimination, and close scrutiny of the evidence; but the jury must dispose of it under a proper direction from the court, upon the facts and circumstances attending each particular case.
Mr. Justice Cowen concurred.
Mr. Justice Bronson dissented, and delivered the following opinion:
The court below instructed the jury that David N. Lord, in addition to the value of his interest in the building as the lessee for an unexpired term, was entitled to an assessment for all his consequential damages; and the jury have awarded to him over one hundred and fifty-five thousand dollars for his goods and personal property which were in the store at the time it was des *169 troyed. The inquisition has been confirmed by the court below, and the question on the return is whether the statute has provided compensation for the destruction of goods as well as the building in which they were contained (2 R. L. 368. § 81, 83).
Was David N. Lord entitled to compensation, under this statute, for the loss of his goods? I lay out of view all the supposed hardship of the case on the part of the claimant, and the equity of charging the loss on the city instead of leaving it to rest on the individual. In this proceeding, [297] he asks such an indemnity as the statute has provided, and the only duty we have to discharge, is properly to expound the law. We must arrive at the intent of the legislature, by considering the language which they have employed; and if they have only authorized an assessment in this form, for the destruction of the building, we are not at liberty to extend the remedy to a loss of goods. However equitable may be the claim for goods, or however little reason there may be for distinguishing between the one kind of property and the other, the question still recurs, has the legislature provided for an indemnity to the owner of personal property ? May he ask for an assessment under this statute?
I entertain no doubt, that in a case of necessity, to prevent the spreading of a fire, magistrates or individuals may destroy private property without subjecting themselves to an action for damages. This is only one of many cases where the maxim applies salus populi suprema lex (Respublica v. Sparhawk, 1 Dall. 337), and cases cited by M’Kean, C. J (2 Kent, 338; 1 R.S. 430, § 29). I agree that this doctrine proves nothing against the claimant, and I think it clear, that it proves nothing in his favor. Whatever may be his rights, if he have any, at the common law, he is now pursuing a statute remedy, and by that standard, his case must be decided.
Should it be admitted that there is no difference in principle between the loss of goods and the destruction of the building, and should it also be granted tliat tlie legislature ought in justice to charge this loss upon the city, it will not aid the claimant in the construction of the statute. The question still returns, what has the legislature done? If the law-makers have omitted a duty, the matter must be adjusted with their constituents. If they have, in terms, provided compensation for the destruction of one species of property without mentioning any other, the maxim is, expressio unius est exclusio alterius.
If we may suppose that the probable destruction of goods as well as buildings, did not enter into the contemplation of the law-makers it seems reasonable to conclude that they did not intend to provide for that [298] case; and if the possible loss of goods, as well as the building, was present to the mind of the law-makers, and they have, by explicit words declared their will in relation to one description of property, without mentioning the other, it is impossible, to say that the remedy extends to both.
The 81st section provides, that “when any building or buildings in the city of New-York shall be on fire, it shall be lawful for the mayor, &c., to direct and order the same or any other building which they may deem hazardous and likely to take fire, or to convey the fire to other buildings, to be pulled down or destroyed.” This clause defines and fixes the authority of the magistrate. It extends to the pulling down or destruction of a “building or buildings” on fire, and to “any other building” deemed- hazardous, and to no other description of property whatever. If they order the destruction of a ship at the dock, a cargo of cotton lying upon the wharf, or a pile of lumber in the street, they do not act under the authority of this statute. In the cases which have been mentioned, the public safety may require that the ship should be sunk, and the goods thrown into the river to prevent the spreading of a conflagration, and the magistrates may be fully justified in *170 giving such order; but still the owner could not maintain a claim under this statute. If he had any remedy, he would be compelled to seek it in some other form.
Having prescribed the cases in which the magistrates may interfere, the section proceeds to provide a remedy for the injured party; and if the language in this clause is broader than that which has already been considered, it ought to be construed in reference to the subject mentioned in the first and most important clause of the section. But there is no such difficulty to be encountered. The second clause is plainly limited in its application, to the injury described in the first. “Upon the application of any person interested in such building so pulled down or destroyed, to the mayor or recorder, or any two aldermen, it shall be their duty to issue a precept for a jury to inquire of and assess the damages which the owners of such building, and all [299] persons having any estate or interest therein, have sustained by the pulling down or destroying thereof.” This is all that relates to the power and duty of the magistrates and jurors in assessing damages. The precept can only issue on the application of a person interested in the building, and damages can only be assessed to the owners, and persons having an estate or interest therein. The right to damages, depends on an estate or interest in the building itself—not the contents. After “ owners,” the words, “ and all persons having any estate or interest therein,” were evidently used for the purpose of covering every description of estate which an individual might have in the property. The provision extends to an estate in expectancy, as well as one in possession; and it covers an estate for life or years, as well as the right of inheritance. When the persons entitled to claim have been ascertained, the injury to be redressed is the destruction of a building, and such damages are to be awarded as they have sustained “ by the pulling down or destroying thereof.” I know not how the legislature could have used more appropriate language for the purpose of limiting the claim to the building alone, unless they had added an express declaration that the word building was not intended to include goods or other personal property. Indeed they have in effect, made such a declaration in the 83d section. “The sum assessed by such jury as aforesaid, for any building so pulled down or destroyed as aforesaid,” shall be borne and defrayed by the corporation.
It is impossible to suppose that the framers of the law did not contemplate the possible necessity of destroying personal property as well as buildings, or that goods and furniture might probably suffer damage as well as the building in which they were contained; and when explicit language has been used in relation to one species of property; without any mention of or allusion to the other, I can not persuade myself that both were intended to be included. Goods may have been omitted in the provision, on the ground that they could be removed, while .there was no such means of escape for the buiíd [300] ing; or, because the city was unwilling to incur so great a hazard as would be imposed by including merchandise as well as buildings. It may have been deemed good policy to leave the owner of personal property to such remedy, if any, as he had at the common law, for the purpose of making him more vigilant in. removing his goods beyond the reach of danger. But without undertaking to penetrate the motive of the law-makers in framing this statute, it is enough that they have plainly given damages for the building, and have just as plainly omitted any provision for the loss of personal chattels. If there be no distinction, either in principle or policy, between the two descriptions of property, the answer still is, the legislature has provided for one case and not the other, and in this proceeding the party is restricted to such redress as the law has prescribed.
It was urged that this was a case where private property had been taken tor public use, and that the legislature was bound to provide just compensa *171 tion (Const. U. S., Amendment 5; Const. N. Y. art. 7, § 7). Should this be granted, it will not advance the argument a single step. It does not prove that the statute extends, or was intended to extend to personal chattels. Whatever may be the moral duty of legislators in relation to cases of this description, they have made no provision for indemnifying.the owners of property in other cities and villages, although it may be destroyed for the public good in a hundred other places, as well as in the city of New York. If the argument of legislative obligation is worth any thing in relation to personal chattels in the city of New York, it is equally cogent in relation to property of all kinds which may be destroyed to prevent the spreading of a fire in other towns; and yet no one will contend that this statute extends to property destroyed by order of the magistrates of Troy or Geneva.
The argument for the claimant rested principally upon the clause which provides that the sums found by the jury shall be paid to the persons in whose favor the assessments were made, “ in full satisfaction of all demands of such persons respectiveiy, by reason of the pulling down or destroying such building.” It was said that compensation under the statute [301] is to be coextensive with the satisfaction, and that the payment is to be in full of all demands by reason of the destruction. I am not aware of any sound rule of interpretation by which this clause, ■which only provides for paying over the money assessed, ran be construed in such a manner as to enlarge the remedy which had been clearly prescribed in the previous clauses. But, independent of this consideration, I do not find in the clause any evidence of an intent to provide for chattels as well as buildings. Damages are to be assessed to the persons who are the owners in fee, or who have some other estate or interest in the building, and the amount assessed is to be paid in full satisfaction of all their demands. What demands were intended? Clearly, no other than such as they had as owners of the building. If, in any possible form, they had a legal claim against the city, the magistrates or private individuals, for the destruction of goods, the satisfaction of all demands on account of the building would not prejudice such a claim. If the persons who destroyed the goods were trespassers, they could not protect themselves by showing that the claimant had accepted a sum of money in full satisfaction of all demands, on account of the destruction of another kind of property.
It was urged by the counsel that the words, “ by reason ” of the destruction of the building, would cover consequential damages, and so include the loss of goods. This is a forced construction. The injury is pulling down a building. For this injury, damages are to be assessed to the owners. The sums assessed are to be paid over in full satisfaction of all demands by reason of the injury. This is the plain and obvious meaning of the statute; andido not feel myself at liberty to go beyond it, under the notion of doing equity, by charging the loss on the city, instead of leaving it to the rest of the immediate sufferers. But if we may resort to this clause, which only provides for paying over the money assessed, for the purpose of giving a wider influence to the previous clause which prescribes the remedy, what shall we say of the 83d section, in which the legislature [302] has spoken upon this matter for the last time? It declares that the sum assessed by the jury, “for any buildings so pulled down or destroyed as aforesaid,” shall be borne and defrayed by the city. Nothing can be more clear than that the obligation of the city, as defined by this section, only extends to the sum assessed for the building. I do not admit that there is any incongruity between the two sections; but if the one is repugnant to the other, then, upon the rule adopted in the late revision, the 83d section, being the last in order, must prevail (2 R. S. 778, § 12). Without, however, invoking the aid of this rule, and reading the two sections together, I am un *172 able to discover anything which will justify the allowance of a demand for goods as well as buildings.
It was said on the argument that the act complained of should be regarded as a legalized trespass, and stress was laid on the word “ damages,” as enlarging the construction of the statute; but neither with nor without the statute was the destruction of the property a tortious act. Independent of the statute, the right to destroy depended on the law of necessity, which, although in bad repute because it has been made the plea of tyrants, nevertheless forms a part of the code of every civilized state. The statute was not enacted for the purpose of legalizing a tort, but for the purpose of designating the individuals who should execute this law of necessity, and for the further and more important purpose of changing the burden in the specified case, where the magistrates were authorized to interfere, from the individual sufferer to the city corporation. The act does not proceed on the ground that any wrong is done to the owner of the property, and he might have been left without remedj', as is the owner of a ship’s cargo, destroyed to prevent the spread of infection (1 R. S. 430, § 29). Damages do not necessarily mean anything more than compensation or valúe, though in actions for torts, they may sometimes be allowed beyond the actual loss of the party injured.
In actions upon contracts, damages include nothing more than the-[303] stipulated debt or obligation, with the interest which may have accrued upon it. The destruction of individual property, for the public safety, bears a strong analogy to the case of taking private property for the public use. In both cases the act is legal; it only amounts to a forced sale; and damages mean nothing more than compensation or value. The property is taken without the owner’s consent; and instead of fixing his own price, a jury is authorized to ascertain the value under the name of damages. When lands are taken for the use of the state, the writ of ad quod damnum directs the jury to assess damages to the owner; but it means nothing more than the value of the property (2 R. S. 588, art. 4). So when lands, waters or streams are taken for the purpose of constructing canals, the owner is to be compensated in damages; but they can not exceed the 'actual value of the property taken, though they may be less (1 id. 225, art. 3). In this case, the property which the magistrates were authorized to take or destroy was a building. For that property, the party was to be compensated in damages; in other words, he was to have the value. We can not, I think, go beyond this, and allow consequential damages of any kind: and, clearly, we can not give the word damages the force of enlarging the remedy, so as to include a description of property which the legislature has wholly omitted to mention.
It seems to be conceded on the argument that no one, but a person having an estate or interest in the building, could recover damages under this statute for the loss of personal chattels. Had the claimant’s goods been in the warehouse of a third person, he would confessedly have been without remedy; and yet there would have been the.same reason for charging his loss on the city in that case as in the one under consideration. If we may extend the application of this statute by construction, so as to include goods as well as buildings in the one case, why may we not do so in the other. If the legislature was under a constitutional obligation to make any provision on the subject, the obligation was coextensive with the injury which might be-sustained; and if, upon this ground, or under the notion that this statute [304] should receive an equitable construction, we can go beyond the words and include goods destroyed in one building, why may we not do the same thing when they are deposited in another? No reason can be assigned why the lessee of a building should be paid for his merchandise, while another man, who has his property under the same cover, should be without remedy. It is probable, as has already been suggested, that the legislature intention *173 ally made a distinction between buildings and personal chattels. There was room for such a distinction; but if it were otherwise, and the legislature acted capriciously, there is no power in the courts to supply the omission.
Very great license has sometimes been taken in the construction of statutes, and they have been extended by equity so as to include cases which seem far enough from the declaimed will of the legislature. It has been said that “judges have liberty and authority over laws, especially over statute laws, according to reason and best convenience, to mould them to the truest and best use;” and this was said for the purpose of justifying “ diverse expositions of the self-same word and sentence,” so as to answer different ends (Hob. 346). This is occupying dangerous ground. I agree that we may go beyond the letter, for the purpose of carrying into effect the intent of the law-maker; but we must, in general, be- able to collect that intention from the statute itself, though we may sometimes resort to the cause or occasion ot its enactment, for the purpose of arriving at a just conclusion (The People v. The Utica Ins. Co., 15 Johns. R. 358). We are not at liberty to act upon the supposed intention of the legislature, nor can a casus omissus be supplied by the courts. Judges are bound to take the law as the legislature has made it (Jones v. Smart, 1 T. R. 52). In this case, I think the legislature has plainly omitted to provide an indemnity to the owner of the goods; and whether it was the result of design or inadvertence, if we supply the ' omission, it will be doing what Bulwer, J., called making laws. [305]
Although I think the proceedings erroneous in relation to the case of David N. Lord, I do not regre.t that my brethren have arrived at a different conclusion.
Whereupon the judgment of the common pleas was affirmed.