THE PEOPLE ex rel. GEORGE BRISBANE et al., Appellants, *v.* THE COMMON COUNCIL OF THE CITY OF BUFFALO, Respondent.

Where the charter of a city commits to municipal officers the authority to determine whether the exigency exists which calls for the exercise of the common-law right to destroy private property in order to stay the ravages of a fire, and vests them with the authority to direct its exercise, in the absence of any provision for compensation to the owners of the property thus destroyed, the city incurs no liability.

Where a limited provision for indemnity is contained in the charter, one who has suffered loss, from the execution of the power so conferred, must bring himself within the provision in order to have the benefit thereof.

The charter of the city of Buffalo (§ 9, chap. 230, Laws of 1853) authorizes certain officers named to direct any building on fire, or other buildings which they may deem hazardous, etc., to be blown up, and gives the right to any person interested in any such buildings so destroyed or injured, " to apply to the common council to assess and pay the damages." The officers named, for the purpose of arresting the progress of a conflagration, ordered a certain building to be blown up ; this was done, and plaintiffs' building, situate on the opposite side of the street

from the one blown up was injured.  In proceedings to compel the common council, by mandamus, to assess and pay the damages, it was found that the injury was the natural and probable result of the explosion. *Held*, that the case was not within the provision of the charter; that the relator was not entitled to the remedy therein prescribed, and hence the writ would not lie.

(Argued March 20, 1879; decided April 1, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of defendant, entered upon the report of a referee.

The proceedings were by mandamus to compel defendants to assess and pay to relators the damages sustained by them by reason of injuries to their building, in the city of Buffalo, caused by an explosion, directed by the chief engineer of the city.

The facts appear sufficiently in the opinion.

*Henry E. Davies*, for appellants.  A party is held to intend to do that which is the natural and ordinary consequence of his acts.  (3 Greenleaf's Ev., § 14; *Van Pelt* v. *McGraw*, 4 N. Y., 110; *People* v. *Orcutt*, 1 Park. Cr. R., 252; *Stiep* v. *Hart*, 1 N. Y., 20; 1 Kent. Com., 464.)  The act under which the relators' claim damages, being a remedial statute, should be liberally and equitably construed. (Dwarris on Stat., 632; Potter's Dwarris on Stat., 73, 231 –236; *Mayor of N. Y.* v. *Lord*, 17 Wend., 285; S. C., in error, 18 id., 126; *Lord* v. *The Mayor of N. Y.*, 18 id., 126, 129, 130.)

*David F. Day*, for respondent.  The only damages to be recovered under the statute are the direct and immediate damages involved in the destruction of the building ordered to be torn down, blown up or destroyed, and not those in any degree remote or consequential.  (*Stone* v. *Mayor of N. Y.*, 20 Wend., 139; 25 id., 157, 163, 165, 177; *Wilson* v. *Mayor of N. Y.*, 1 Den., 595; *Ratcliff* v. *Mayor of*

*Brooklyn*, 4 Com., 195; *Graves* v. *Otis*, 2 Hill, 466; *White* v. *Yazoo*, 27 Miss., 357; *Gov. & Co.* v. *Meredith*. 4 T. R.. 794 )

ANDREWS, J.   On the twenty-fifth day of January, 1865, the then acting chief engineer of the fire department of the city of Buffalo, with the concurrence of the mayor and three aldermen of the city, for the purpose of arresting the progress of a conflagration which had commenced in the American hotel, situated on the west side of Main street in that city, directed a certain other building on the same street, known as the Eagle tavern, adjoining the American hotel on the north, to be blown up with gunpowder.   The relators were the owners of a building called the Arcade, situated on the east side of Main street, nearly opposite to the building directed to be blown up, and separated therefrom by the street, which was about 100 feet in width.   In pursuance of the direction thus given, the Eagle hotel was blown up and the concussion caused thereby shattered the glass in the building of the relators, whereby they sustained damages to an amount exceeding $3,000.   The referee finds that the blowing up of the Eagle tavern would not necessarily or naturally be expected to injure the walls of the relators' building, but that it was a natural and not improbable consequence that the glass therein would be broken by the explosion and the concussion caused thereby.

This proceeding is instituted to compel the city of Buffalo to assess and pay the damages thus sustained by the relators. The relators base their right to relief upon certain provisions of the defendant's charter.   These provisions are contained in sections 9 and 10 of title 10 of the charter (Laws of 1853, chap. 230), which are as follows : " § 9. When any building in the city is on fire, it shall be lawful for the chief or acting chief engineer, with the concurrence of the mayor and any three aldermen, or with the concurrence of any five aldermen, to direct such building or any other buildings which they may deem hazardous, and

likely to take fire and communicate to other buildings, to be torn down, or blown up, or destroyed ; and no action shall be maintained against any person or against the city therefor. But any person interested in any such building so destroyed or injured, may within three months, and not thereafter, apply in writing to the common council, to assess and pay the damages he has sustained. At the expiration of the three months, if any such application shall have been made, the common council shall either pay the said claimant such sum as shall be agreed upon by them and the claimant for such damages, or shall proceed to ascertain the amount of such damages, and shall provide for the appraisal of the same, and for the assessment, collection and payment of the amount so agreed upon or appraised, in the same manner as is provided by title eight of this act for the ascertainment, assessment, collection and payment of damages sustained by the taking of property for purposes of public improvement.

§ 10. The commissioners appointed to appraise the damages caused by the pulling down or destruction of such building, shall take into account the probability whether the same would have been destroyed or injured by fire if it had not been so pulled down or destroyed, and may report that no damages should equitably be allowed to such claimant. Whenever a report shall be made and finally confirmed, for the appraising such damages, a compliance with the terms thereof by the common council shall be deemed a full satisfaction of said damages."

The point to be determined is whether the circumstances bring the case within these sections, and entitle the relators to the remedy therein provided.

The right of the Legislature to invest the city authorities with the power to destroy buildings in the city to prevent the spread of a conflagration, in cases of imminent and pressing danger, is not questioned. The charter, in this case, simply regulates the manner of exercising a right vested at common law in any person to destroy the property of another, in a great emergency, to stay the ravages of fire or

pestilence, and thereby secure the public safety. The Legislature committed it to the officers named in the charter to determine whether the exigency existed which called for the exercise of this extraordinary power, and invested them with authority to direct its exercise ; and in the absence of any provision for compensation to the owners of property thus destroyed, the city would incur no liability. The authorities upon this point are conclusive : (2 Kent Com., 339 ; *The Mayor* v. *Lord,* 17 Wend., 285 ; *Stone* v. *The Mayor,* 25 id., 157 ; *Russell* v. *The Mayor,* 2 Den., 461.)

There is, however, great justice and equity in the claim of one whose property has been thus destroyed to compensation from the public for the loss which he has thereby sustained. His property is taken, in a general sense, for public use, and it is certainly reasonable that he should not be compelled alone to bear the loss rendered necessary for the general good. The charter of the defendant, in the sections quoted, makes a limited and guarded provision for indemnity by the city for losses sustained from the execution of the authority conferred upon the officers designated. But as both the right conferred and the obligation imposed are statutory, the relators must bring themselves within the statute, in order to have the benefit of its provisions.

That the injury to the property of the relators was in consequence of the execution of the direction given by the city officials to blow up the Eagle tavern, clearly appears from the facts found, and also that it was a natural and probable result of the explosion. But the point here is whether the charter applies to the case. It is to be observed that it does not undertake to provide for all injuries to property, resulting from the destruction of buildings to stay the progress of a fire. The damages for which an assessment is authorized are damages " to a building so destroyed or injured." No provision is made for compensation for personal property which may be lost by the destruction of the building in which it is, and if the statute, by construction, may be held to provide compensation for personal property therein belonging

to the owner of the building, as a part of his damages, it cannot be extended so as to cover damages sustained by other persons, for the loss of personal property owned by them, which may have been in the building at the time of its destruction. This was expressly held in the case of *Stone* v. *The Mayor*, 20 Wend., 139, in a case arising in the city of New York under a statute similar to the one in question: (S. C., 25 Wend., 156.) It is not enough, therefore, to entitle the relators to a remedy under the charter that it appears that their loss was occasioned by the explosion, or that it stands upon the same general equity as the loss of an owner of the building directed to be blown up or destroyed. The Legislature has only provided for a single case, and that is for the case of an owner, whose building is blown up or destroyed by the order of the designated city officers. Whether the remedy should be extended to other cases, it is for the Legislature to determine. I am of opinion that the case of the relators is not within the statute. The authority conferred upon the officers named in the charter is to direct a building on fire, " or any other building which they may deem hazardous, etc., to be torn down, or blown up, or destroyed; " and the common council are directed to assess and pay the damages sustained " by any person interested in any such building so destroyed or injured." No order or direction was given in respect to the building of the relators. The exigency did not render its destruction necessary, nor was it intended to destroy it. It was not a part of the building directed to be blown up, but was separated therefrom by the intervening street. By the execution of the direction given, incidental injuries resulted to the building of the relators. But the statute was, I think, intended to apply only to cases where the city authorities directed the destruction of the building, for injury to which compensation is claimed, and that it cannot be held, for the purpose of maintaining a claim to compensation, that they directed all the incidental injuries to detached and separate buildings which may naturally have resulted from the blow-

ing up or destruction of the building to which their order related.

The question presented is not free from difficulty; but the limited construction I have given to the charter is, I think, the one indicated by a consideration of its provisions.

For these reasons, the judgment should be affirmed.

All concur.

Judgment affirmed.