Martin v. Hertz.

---

Nicholas Martin, et al., v. Henry L. Hertz, for use, etc.

Gen. No. 11,768.

1. REPLEVIN BOND—*what liquidation of damages under.* Where the court, in an action of replevin, enters an alternative judgment, providing, in the event of the non-return of the property replevied, for the payment of a specified amount, etc., the damages which may subsequently be recovered under the bond given in such action are deemed to have been fully liquidated, and this without regard to the value of the property taken under the writ.

ADAMS, J., dissenting.

Action of debt on replevin bond. Appeal from the Superior Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed February 20, 1905.

Statement by the Court. This is an appeal from a judgment against the appellants, Nicholas Martin and Leonard Harland, in the Superior Court, as follows:

" Therefore it is considered by the Court that the plaintiff, Henry L. Hertz for use of W. F. McLaughlin & Company, do have and recover of and from the defendants, Nicholas Martin and Leonard H. Harland, his said debt of forty thousand dollars, and also his total damages of twenty-two hundred and eighty dollars and forty cents, in form as aforesaid by the Court found due and assessed, together with his costs and charges in this behalf expended, and have execution therefor. And it is further ordered that said debt be discharged upon the payment of the said damages, interest thereon and costs of said suit."

The history of the litigation, of which this judgment was the final result, is this, as shown by the record :

On November 20, 1891; W. F. McLaughlin recovered a judgment in the Circuit Court of Cook County against Q. W. Loverin and George J. L. Janes for $1,168.71. The defendants sued out a writ of error to the Appellate Court, which affirmed the judgment November 15, 1892. Loverin v. McLaughlin, 46 Ill. App. 373. The defendants then went on writ of error to the Supreme Court, by which the Appellate and Circuit Court judgments were affirmed on May 12, 1896. Loverin v. McLaughlin, 161 Ill. 417.

An execution had apparently been issued and returned unsatisfied at some date before November 15, 1892. On that date an alias execution on said judgment was sued out of the clerk's office of the Circuit Court for $1,168.71 damages and $9 costs, and given to the sheriff of Cook County, James H. Gilbert, for service. The sheriff immediately made a levy, which he thus described in his return on the execution :

* * * "I did on the 15th day of November, 1892, levy upon all the right, title and interest of said defendant George J. L. Janes in and to the following described property, to-wit: 11 office desks and contents," (here follows description of various office fixtures) "13 barrels of whiskey, * * * 3,000 one-pound cans of spice assorted " (here follows a long list of groceries in large packages, of which the items given are illustrations), * * * "and all the property contained in the premises on the second floor of the building situated on the northwest corner of Green and Fulton streets, being the premises of Janes Brothers and Company."

The sheriff took possession of the property, the right, title and interest of George J. L. Janes in which he had levied on, and on the next day, November 16, 1892, Ernest H. Janes began in the Superior Court a suit in replevin for it against the sheriff. The plaintiff Ernest H. Janes filed his own affidavit that he was the owner and " fully entitled to the possession of the following goods and chattels (naming those described in the sheriff's return above quoted), and all the property contained in the premises on the second floor in the building situated on the northwest corner of Green and Fulton streets, being the same property levied on by the sheriff of Cook County by virtue of an execution on the 15th day of November, 1892." The affidavit asserts the value of the goods and chattels to be $20,000. The property being in the possession of the sheriff, the writ of replevin which was issued in accordance with the affidavit was, under the statute, given to the coroner to serve, and in accordance with section 10 of the Replevin Act a bond was given to that officer, who was at that time Henry L. Hertz, the nominal plaintiff and appellee in the cause at bar. It is upon this bond that the judgment appealed from here is based.

The obligors in the bond were Ernest H. Janes and Nicholas Martin, and Leonard H. Harland, the obligee, Henry L. Hertz, coroner, and his successors in office. The penal sum of the bond was $40,000, and the condition was as follows:

" That whereas, on the 16th day of November, 1892, the said Ernest H. Janes sued out of the Superior Court of Cook County aforesaid a Writ of Replevin against James H. Gilbert, defendant, for the recovery of the following described goods and chattels " (naming the goods described in the sheriff's return and the replevin affidavit) " and all the property contained in the premises on the second floor of the building situated on the northwest corner of Green and Fulton streets, being the same property levied on by the sheriff of Cook County by virtue of an execution on the 15th day of November, 1892. Now, if the said Ernest H. Janes, plaintiff, shall prosecute his suit to effect and without delay and make return of such property, if

return thereof shall be awarded, and save and keep harmless the said coroner in replevying the said property and pay all costs and damages occasioned by wrongfully using out said Writ of Replevin, then this obligation to be void; otherwise to remain in full force and effect."

The property described in the replevin affidavit, bond and writ, was taken by the coroner from the sheriff under the writ, and turned over to the replevin plaintiff, Ernest H. Janes. The ordinary declaration in replevin was filed by the plaintiff and a plea or avowry filed by the sheriff, the defendant, setting up in proper form that the goods taken were the property of "the firm of Janes Bros. & Co., a partnership," etc., and not of the plaintiff, and that as such property of said partnership firm, they were subject to an execution described in favor of W. F. McLaughlin against George J. L. Janes of the firm of Q. W. Loverin & Co., etc., for $1,168.70 and costs, and that by virtue of said execution the defendant, being sheriff, took and detained the said goods. The plea also set up that immediately before the levying of the execution the plaintiff had, in answer to inquiries of the defendant, represented that the firm of Janes Bros. & Co. was composed of Ernest H. Janes and George J. L. Janes as the only members, and that the goods and chattels mentioned in the declaration were the property of said firm of Janes Bros. & Co., and that thereupon the defendant, by reason of said representations, levied "upon the interest of George J. L. Janes in said partnership assets, etc." This replevin suit went to trial before a jury in the Superior Court, and a verdict was returned finding the issues for the defendant and that the right to the possession of the property in question was in the defendant.

The following special findings were made:

"Q. Do you find that prior to and at the time of the seizure of the property described in the declaration in this case, the plaintiff, E. H. Janes, stated to John M. Harlan that George J. L. Janes had an interest as a partner in the business of Janes Bros. & Co., in the property seized?

Answer: Yes.

Q. Do you find from the evidence that George J. L. Janes had some interest in the property described as having been seized in the declaration in this case? A. Yes.

Q. Do you find from the evidence that at the time of the seizure of the property described in the declaration in this case, George J. L. Janes had some interest as a partner in the property seized? A. Yes."

April 2, 1896, on this verdict, after a motion for a new trial had been made by the plaintiff and overruled by the court, judgment was entered. The effect of that judgment on the merits of the suit at bar is the primary question in this appeal. It is as follows: .

"Thereupon it is considered by the court, and it is so ordered, that the plaintiff do make return within ten days therefrom of the property seized under authority of the replevin writ heretofore issued in this cause, *and in default of such return that the defendant do have and recover from the plaintiff the sum of one thousand and four hundred twenty-seven dollars and ninety-four cents ($1,427.94)*, said sum being the amount of the judgment with taxed costs, for which said property was rightly held under and by virtue of a writ of execution at the time it was seized as aforesaid, together with interest thereon at the rate of six per cent. per annum from the 15th day of November, 1892, to the second day of March, 1896. And in default of the return by the plaintiff of the property in accordance with this order, it is further ordered that the defendant have execution for said sum of one thousand four hundred twenty-seven dollars and ninety-four cents ($1,427.94)."

This judgment was entered in accordance with Section 22 of the Replevin Act, which provides: "* * * If the right of property is adjudged against him" (i. e., the plaintiff in a replevin suit), "judgment shall be given for a return of the property and damages for the use thereof from the time it was taken until a return thereof shall be made, * * * or if the property was held for the payment of any money, the judgment may be in the alternative that the plaintiff pay the amount for which the same was rightfully held with proper damages within a given time, or make return of the property."

From this judgment the defendant appealed to this court, where it was affirmed.    Janes v. Gilbert, 68 Ill. App. 611. This court held that the special finding of the jury, on conflicting testimony, that at the time of the seizure of the property described in the declaration, George J. L. Janes had some interest as a partner in the property seized, bound this court to hold the seizure lawful and the replevin wrong. The opinion notices a contention of the defendant that section 22, above quoted, should be understood as applying only where the money was due and owing from the plaintiff, and that in any case, the amount to be paid should not exceed the value of the interest in the property which could be subjected to the payment for which it was held, and holds that "The alternative judgment gives to the plaintiff the option which he will do, pay or return, and is therefore not harsh upon him.    If he has put it out of his power to return, the verdict and judgment against him establish that he did so in his own wrong.    We are to read the statute as meaning what it says.    *   *   *   Can any reason be suggested why a mere wrongdoer, without colorable claim of right, replevying property upon which the defendant has but a lien, should be in a better position when defeated than would be the general owner, in good faith disputing the lien?"    From the Appellate Court the defendant appealed to the Supreme Court, where the judgment was again affirmed.    Janes v. Gilbert, 168 Ill. 627. The Supreme Court notices the contention of the defendant discussed by the Appellate Court, and after quoting the statute says: "It might be a hardship in such a case to enter an absolute judgment for the return of the property where the only interest the defendant had in it was in the nature of a lien for the payment of a debt.    It is therefore seen that the effect of the statute is to relieve the plaintiff of this hardship in giving him the privilege of retaining the property by paying the money for which it was held. Under the statute he has this option, and if he does not himself owe the money for which the property is held, or for any reason does not choose to pay it, he may comply

with the judgment by returning the property. The statute does not say that the money must be money owed by the plaintiff, but only that it must be money for the payment of which the property was rightfully held. * * * Here the plaintiff had an interest in the property, and he claimed to be the sole owner, and if the finding had been that the propert was not rightfully held for the payment of the amount of the execution under which the defendant took and held it, the plaintiff would have been entitled to its possession; but as the finding was that it was so rightfully held, the provision of the statute was applicable, and it was his duty to return the property or pay the amount for which it was held. It is said in objection to this view, that there was no evidence as to the value of George J. L. Janes' interest in the property, and that there was, therefore, nothing upon which to base the alternative judgment. *It may be observed the alternative judgment or the amount of it, is not by the statute based upon the value of the property, or of the value of the interest in it held by the defendant for the payment of the money, but upon the amount of money for which the property is rightfully held, and if the plaintiff conceives that the amount is too large, he may fully comply with the judgment by returning the property.* There was no evidence in this case as to the value of the interest of said George J. L. Janes in the property levied on, *and it is not necessary to determine here whether or not the plaintiff might have reduced the amount of such alternative judgment to the value of his brother's interest in the property.* He denied that his brother had any interest in it whatever as owner, and the issue was found against him."

After the affirmance of the judgment in the replevin suit by the Supreme Court, and the filing of the order of affirmance in the Superior Court on July 28, 1898, and before August 8, 1898, when the suit at bar was commenced, Ernest H. Janes died, as would appear by a stipulation in the bill of exceptions in this cause.

No part of the goods taken under the writ of replevin was ever returned to the coroner, and no part of the said

sum of $1,427.94 was ever paid as ordered by the alternative judgment, nor was said alternative judgment ever satisfied in whole or in part.

August 8, 1898, the suit in debt, which resulted in the judgment from which this is an appeal, was begun by Henry L. Hertz, the obligee in the replevin bond, for the use of W. F. McLaughlin & Co. against Nicholas Martin and Leonard H. Harland, the surviving obligors and sureties in the replevin bond before described.

The amended declaration on which the cause was tried below set up the institution of the replevin proceedings and the taking of the bond in question by the appellee as coroner "from the said Ernest H. Janes as principal, and from the said Nicholas Martin and Leonard H. Harland as good and sufficient sureties," and described the bond and condition thereof. It further alleged the execution of the replevin writ and all the subsequent proceedings, including the judgment and its affirmance by the Appellate and Supreme Courts. It then declares that "said Ernest H. Janes did not make return of said goods and chattels within the ten days specified in the order of the court in said cause, nor at any other time whatsoever, and that the said Ernest H. Janes did not pay the sum of $1,427.94, or any part thereof," and that before the beginning of the suit Ernest H. Janes had died. It further alleges that W. F. McLaughlin & Co., for whose use the suit was brought, was obliged to employ attorneys in the replevin suit, and to pay them $300, and that plaintiff should recover this and the costs in the replevin suit, and his reasonable attorneys' fees in the suit at bar, as "further damages," and fixed the *ad damnum* at $40,000.

To this declaration the defendants filed pleas of *non est factum* and also notice of special matters of defense, to the effect, first, that there was no breach of the conditions of the bond, except the failure on the part of the plaintiff in said replevin suit to prosecute his suit with effect, by which defendant was not damnified except to the extent of taxable costs and a reasonable attorney's fee; secondly,

that no return of the property had been awarded within the meaning of the bond; thirdly, that the defendant did not by the bond become liable to pay the amount of any judgment or execution under which the property mentioned in the bond was held; fourthly, that the judgment in the replevin was as set forth in the notice, and not as stated in the plaintiff's declaration; and finally, " that at the time of the levy of the execution mentioned in the declaration, Ernest H. Janes  *   *   *   was a member of the firm or partnership of Janes Brothers,  *   *   *   that said firm was the owner of the specific property described and in controversy in said replevin proceedings; that as a member of said firm Ernest H. Janes had an interest in said specific property at the time of the levy of said execution,  *   *   *  that said firm was at the time of the levy of such execution and has at all times since such levy been and now is insolvent, and that the interest of George J. L. Janes, the judgment debtor in said execution, was not at the time of said levy, nor has it since been, of any value whatsoever."

The cause under this state of the pleadings was submitted to the court below for trial, a jury being waived. On the trial, after documentary evidence and a stipulation showing substantially all the proceedings in the replevin suit before set forth had been offered by the plaintiff, he produced testimony showing the legal interest on $1,427.94, the amount of the alternative judgment, from April 2, 1896, to the date of the trial to be $536.26, the costs of the replevin suit in the Appellate Court to be $5, and those in the Supreme Court to be $11.20, also that the attorney's fees of the defendant in said replevin suit amounted to $300, and rested. The defendants thereupon showed in evidence the proceedings in the cause of McLaughlin v. Loverin et al., and the execution therein, with the return of the sheriff, and the special findings of the jury in the replevin suit. They then offered the testimony of George J. L. Janes, a part of which, admitted over the objection of the plaintiff, tended to show that the property replevied was at the time of the levy of the execution the property

of the firm of Janes Bros. & Co., that Ernest H. Janes was a member of that firm, and as such, had an interest in its property and assets, and that about two months after the replevin action was commenced, most of the property replevied was destroyed by fire.

In addition to this, the defendants offered to show that the firm of Janes Bros. & Co., was insolvent at the time of the levying of the execution involved, and so remained, and about six months after the replevin action was commenced made an assignment for the benefit of creditors, and that the assets of the firm paid about thirty cents on the dollar. An objection by the plaintiff to this evidence as irrelevant and immaterial was sustained by the court, and it was excluded. Thereupon the defendants presented to the court eleven different findings and requested that they be made:

1. That under the evidence the plaintiff was not entitled to recover the amount of the judgment against Ernest H. Janes in the replevin suit.

2. That the bond having been executed by three persons and two only having been made defendants, the plaintiff could not recover.

3. That the judgment for $1,427.94 against E. H. Janes was not within the terms or conditions of the replevin bond.

4 and 5. In effect the same as 1 and 3.

6. That the value of the interest of George J. L. Janes in the said firm of Janes Bros. & Co. at the time of the levy of the execution was an issue in the action.

7. That the burden of showing the value of the interest of said George J. L. Janes in the firm of Janes Bros. & Co., at the time of the levy of said execution, was upon the plaintiff.

8 and 9. That the measure of damages of plaintiff's recovery was the value of the interest of George J. L. Janes as a partner of the firm of Janes Bros. & Co. at the time of the levy of the execution thereon up to the amount of such judgment, costs of levy, and costs and damages in the

replevin suit. But if the value of such interest of said George J. L. Janes in the said firm was less than the amount of such execution, then the plaintiff could recover such less sum only with the costs and damages in said replevin action.

10 and 11. In effect the same as 8 and 9.

The court refused to make these findings, or hold these propositions as matters of law, and the defendants excepted. The court then found the issues for the plaintiff, and that " there was due and owing to the plaintiff from the defendants forty thousand dollars debt and damages as follows: Alternative judgment in the replevin action of

| | | |
|---|---:|---:|
| Janes v. Gilbert | $1,427 | 94 |
| Interest at 5 per cent. on same to date | 536 | 26 |
| Costs in Appellate Court | 5 | 00 |
| Costs in Supreme Court | 11 | 20 |
| Attorney fees | 300 | 00 |
| | $2,280 | 40 " |

A motion for a new trial was made by the defendants and overruled by the court, and the defendants excepted. Thereupon the judgment first in this statement recited was entered and appealed from.

In this court the errors assigned on the record are the admission of improper evidence, the exclusion of proper evidence, and the refusal to consider proper evidence, by the Superior Court, the refusal also by that court to hold propositions of law as requested by appellants, and its finding in favor of appellee, its denial of a new trial, its entry of judgment in favor of appellee, its ruling as to the measure of appellee's damages, and its requiring appellant to pay in satisfaction of the judgment any greater sum than $16.20, and interest and costs.

On argument the only ground of complaint is practically this, that the court below erred in its holding on the measure of damages by which it made the alternative money judgment in the replevin action the basis of recovery against the defendant sureties in this action.

MUSGRAVE, VROMAN & LEE, for appellants.

JOHN MAYNARD HARLAN, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The question involved in this appeal is apparent from the statement prefixed to this opinion. That statement has been made in full detail in order that no factor in the situation might seem to have been overlooked. The question, shortly stated, is, were the sureties on the replevin bond foreclosed as to the extent of their liability in this suit by the alternative judgment against their principal in the replevin suit?

It is urged in the negative by appellants that their liability in this action should be limited to the value of the interest in the goods replevied of George J. L. Janes as a partner in the firm of Janes Bros. & Co. If this contention of appellants is correct, there was error in the exclusion of evidence below which should cause the reversal of the judgment and the remandment of the cause. If not, this judgment should be affirmed. On the side of appellants' contention are the considerations that the liability of sureties on replevin bonds, as well as on other bonds, is governed by rules *strictissimi juris;* that the letter of the condition of the bond says nothing of the payment of an alternative judgment under the statute in the replevin suit, but beyond the obligation to prosecute the suit and return the goods replevied, if return shall be awarded, binds the obligors only to pay all costs and damages occasioned by wrongfully suing out said writ of replevin; that compensation for actual loss is the general and primary measure of damages; and that the actual loss caused to the obligee in this case could be only the expenses of the suit and the value of the particular interest in the goods which had been levied on by the sheriff, up to but not necessarily equaling the amount for which the levy was made. These considerations are not without force, but on the other side, and in the opinion of the majority of the court outweighing them and justifying an affirmance of this judgment, is

the peculiar provision of our Replevin Act, under which this alternative judgment was rendered, which makes us believe that in this enactment in connection with the rest of the Act, it was the legislative intention to allow the fixing or liquidating in the replevin suit itself, of the damages for a non-return of the goods replevied to one holding a lien on them for an ascertained amount of money, and further believe that this liquidation was intended in such case to be without reference to the value of the property so held and to bind equally with the principal himself the sureties who furnished the principal with the means of making the wrongful replevin. This construction does not seem to us inconsistent with justice, as appellants claim it to be. It certainly tends to shorten and simplify litigation. The sureties on a replevin bond, we think, contracting as they do, in view of the contemplated action of their principal in the prosecution of the replevin suit and in view of the statute, which declares what the liability of that principal shall be in case of an unsuccessful event in his suit, may well be held to the hazard of his proceeding and to the same liability which its result fixes on him. Schott .v. Youree, 142 Ill. 233–243. Moreover, we think that the language of this court and of the Supreme Court in the litigation out of which this judgment arose, tends to confirm this view of the rights of the parties, and that the Supreme Court of the United States has given weight of its authority to a view of the law of damages against the sureties on a replevin bond militating strongly against the contention of appellants.

To sustain the proposition that the language of the Act shows a legislative intention that the action of the court in giving the alternative judgment should be a liquidation of the damages for a breach of the bond by a non-return, it is, perhaps, impossible to add anything material to the language of the Act itself as quoted in the statement. That such a construction is consonant with justice and the rights of the parties, seems to us apparent for this reason.

The levy on a partner's interest in partnership property

by a sheriff, either by attachment or an execution, is made by his taking into corporeal possession the property itself. Newhall v. Buckingham, 14 Ill. 405; Freeman on Executions, secs. 125 and 254. If the partners who are not debtors desire to release this lien, they must, in the absence of statutory provisions giving some other remedy, proceed in equity to have an accounting and restrict the sale to the debtor's interest (Newhall v. Buckingham, *supra*), or else pay the indebtedness. Even if there be statutory remedies in the nature of provisions for forthcoming bonds, or other expedients for avoiding the inconvenience of a continued holding of the property under seizure by attachment, they are always predicated on sufficient security to pay the judgment which may be obtained against the debtor. Why should an entirely unauthorized and improper proceeding on the part of the partner—one in which he takes the part of a mere trespasser, as this court in Janes v. Gilbert, 68 Ill. App., 611, says that Ernest H. Janes did in this matter—be so treated as to make it an easier and more efficacious method of disposing of the lien than the duly authorized and proper proceeding would be ?

The value of the property—the corporeal *res*—to be replevied, determines under the statute the amount of the bond to be given when the replevin is made. The breach of the bond is the failure to return that property. What reason in justice is there that damages for that failure should not be liquidated by the statute at the amount for which the property was rightfully held? To determine them twelve years afterwards on a suit on the bond, as in the present case the appellants insist must be done, would be no easy task, and the attempt no more likely to result in their accurate adjustment than to adopt as their measure the amount for which the property was rightfully held. The likelihood, indeed, would be the other way. Had these goods not been taken from the sheriff, the going concern which owned them; whether it were solvent or insolvent, would probably to release them, have paid the just debt of the partner who had an interest in them, and

Martin v. Hertz.

charged it to him. Practically, even if not theoretically, the amount of the actual damage to the beneficial plaintiff in this suit by this improper replevin, was just the amount which the judgment below gives him.

The plaintiff in the suit and the principal in the writ has always, by obeying the order of return, a way open to avoid the necessity of paying more than the value of the replevied property, or more than the value of that interest in it which is liable for the debt. But appellants say that the construction we put on the statute necessarily works injustice if, as in the present case, some unforeseen catastrophe destroys the chattels and renders the return impossible. This does not so appear to us. If the plaintiff in the replevin chooses by an improper and unfounded action, such as this replevin suit has been adjudicated to be, to take from the sheriff goods many times in value the amount of the debt, in which goods the interest of the debtor is then undetermined, it is but just that the risk of their continued and unimpaired existence during his holding should be his and his bondsmen's—at least up to the full amount of the sheriff's lien. He has the care of the goods, he can insure them, he ought not to have touched them under the process he invoked. He is a wrongdoer *ab initio*. The sheriff should be and is, in such a case, relieved from any care in the preservation of the goods, and the man who has wrongfully taken them could justly enough be held to be an insurer of their existence until their return is ordered and accomplished. But he and his bondsmen are only held, under our statute and the construction we are giving it, to the amount of the alternative judgment. It would seem that the provision for this alternative judgment was inserted entirely for the benefit of the replevinor —to allow a third party to test the liability of goods levied on to attachment or execution, against a given debtor, and if unsuccessful, to escape with no greater penalty than the payment of the debt for which the levy was made, although the goods might have been destroyed in the meanwhile. Ordinarily, the provision would enure to the benefit of per-

sons standing in the position of the defendant's principal in this case. Where it does not, we think the greater liability is one created by the replevin act both against him and the bondsmen made by it necessary before the plaintiff can secure the execution of his writ.

The cases cited by appellants are not, as we view it, in point. That in Massachusetts it has been frequently held that "the bond stands in the place of the property," and that for a refusal to return the replevied property, while judgment must be for the penalty, execution can only be for that part of the penalty shown by the plaintiff to be due and payable,—is true; but this does not affect the question whether the alternative judgment formally rendered under the statutes of this state against the principal in the bond, in default of his return of the goods, is not the part of the penalty "thus shown to be due and payable." The judgment here is for $40,000; the amount "thus shown due and payable" is $2,280.40. In the absence of this provision for an alternative judgment, or of the rendition of such a judgment in this case, the Massachusetts cases cited by appellants would be in point, but whether they would be controlling, in view of the holding of the U. S. Supreme Court in Sweeney v. Lomme, 22 Wall. 208, "that the liability of the sureties in a replevin bond is not to be measured by the value of the interest in the property of the attachment debtor for whose debt it was seized by the sheriff, " but " that the value of the property at the time it was replevied, limited by the debt still due on the attaching creditor's judgment and the penalty of the replevin bond, are the elements of ascertaining the damages in the suit on that bond,"—may well be doubted.

We are confirmed, as before suggested, in our view of this case by the implications from the language of the Appellate Court in Janes v. Gilbert, 68 Ill. App. 611, and of the Supreme Court in Janes v. Gilbert, 168 Ill. 627. In both these courts the principal of the bond sued on here claimed that the alternative judgment which was entered against him in accordance with the statute was too large,

and that such a judgment should not in any case exceed in amount the value of his brother's interest in the property. In both courts this claim was disallowed, and it was said that the principal's duty was, under the statute, plain—to return the property or pay the amount for which it was held.

Despite the argument of appellants that Ernest H. Janes might have successfully maintained a bill in equity to restrain the execution on this judgment, we think there was no such method or any other open to him, after the decision of the Supreme Court, to avoid the liability placed on him by the judgment of the Superior Court in the replevin suit. The only question left open was whether the sureties on his replevin bond shared that liability. We think they did.

The judgment of the Superior Court will be affirmed.

*Affirmed.*

Mr. Justice ADAMS, dissenting.

I cannot concur in the decision of the court for the following reasons:

1. The payment of the alternative judgment is not within the condition of the bond, as was the case in Sweeney v. Lomme, 22 Wall., mainly relied on by appellant. The condition of the bond is to " pay all costs and damages occasioned by wrongfully suing out said writ," etc.

"A synonym of damage, when applied to a person sustaining an injury, is *loss*. Loss is the generic term. Damages is a species of loss. Loss signifies the act of losing, or the thing lost. Damage, in French *dommage:* in Latin *damnum* from *demo*, to take away, signifies the thing taken away, the lost thing, which a party is entitled to have restored to him, so that he may be made *whole* again. * * * Loss or damage sustained—the thing taken away—may be supplied by compensation." Fay v. Parker, 53 N. H. 342, 343. "According to Co. Lit. 257a, the legal meaning of damages is ' a recompense given for a wrong.' Any plain and gross excess above a just and fair equivalent is a

departure from that principle." 17 N. J. (2 How.), 480, 482.

"Damages have a legal signification, and are peculiarly appropriate to express an intention to give full indemnity. These are defined to be a compensation given by a jury, for an injury or wrong done the party before the action brought. (Coke Litt., 257; 2 Bacton, Tet. Damages, 263.) The legal measure of which is the amount of the loss necessarily or materially resulting from the act." Mayor, etc. of N. Y. v. B. L. Lord et al., 17 Wend. 285, 293.

It is the damage, as above defined, which the sureties obligated themselves to make good to the obligee in the bond. Thus far and no farther does their obligation extend. The general rule is that the measure of damage, in case of a refusal to return property, is the value of the property. Treman v. Morris, 9 Ill. App. 237. But when the suit for non-return is brought on behalf of a special owner, the measure of damage is the interest of the special owner, when that does not exceed the value of the property. David v. Bradley, 79 Ill. 316.

In Warner v. Matthews, 18 Ill. 83, a suit on a replevin bond, the court say : "The true question is, what has the plaintiff lost, or to what amount is he injured by the failure of the defendant to return the property? And to determine this, it is material to know the extent of his interest in the property." See also, Atkins v. Moore, 82 Ill. 240, 242; King v. Ramsay, 13 Ill. 619; Turner v. Armstrong, 9 Ill. App. 24, 27.

" In an action on the bond, the damages are assessed on the principle of compensation." Wells on Replevin, sec. 457.

If the province of the courts is to administer justice, the law could not, reasonably, be otherwise than as stated in the authorities cited.

Had the property been returned, the sheriff, by virtue of the execution, would have sold the interest of George L. Janes in the property to the highest bidder, and it is obvious the payment to McLaughlin, the plaintiff in the ex-

ecution, of the value of the property at the time it was taken from the sheriff, with legal damages for its detention, would fully compensate McLaughlin. The appellee not only failed to prove his damage or loss, either by proving the total value of the property, or the value of the interest of McLaughlin in it, levied on by the sheriff by virtue of the execution issued on the judgment in McLaughlin v. Janes, et al., but the court, upon appellee's objection, excluded such evidence, when offered by appellant.

2. It is contended by counsel for appellee that the alternative judgment, or judgment *nisi*, is conclusive as to the damages which appellee is entitled to recover. I think this contention untenable. The measure of the liability of sureties is fixed by the terms of the instrument they sign, and cannot be enlarged or varied by judicial construction. Mix v. Singleton, 86 Ill. 194; Vinyard v. Barnes, 124 ib. 346; People v. Huffman, 182 ib. 390, 401; Franks v. Matson, 211 ib., 338, 347; Young v. Mason, 3 Gilm. 55. In the last case cited the suit was on an appeal bond. One of the conditions of such a bond prescribed by the statute was, that the obligors should pay whatever judgment might be rendered by the court upon the dismissal *or trial* of the appeal, and one of the breaches assigned was, that the obligors had not paid the judgment. The bond sued on was conditioned for the prosecution of the appeal with effect, and that the obligors would pay whatever judgment might be rendered upon the *dismissal* of the appeal, omitting the words " or trial." The appeal was not dismissed. On the contrary, the court heard and decided the case and rendered judgment, on appeal. Held that there could be no recovery on the breach assigned, that the obligors did not pay the judgment. In the present case there is no condition that the obligors shall pay any judgment.

It is not intended by section 22 of the Replevin Act, that the alternative judgment therein authorized shall stand for or be equivalent to an assessment of damages, in a suit on the replevin bond. It is very clear that such judgment is not in fact an assessment of damages.

If the indebtedness of the plaintiff in replevin is $1,000, and the total value of the property which he fails to return only $100, nevertheless, the statute peremptorily requires the alternative judgment to be for $1,000, with proper damages.

In Janes v. Gilbert, 168 Ill. 627, the court evidently regard the provision for an alternative judgment as a privilege extended to the plaintiff in the replevin suit. The court say: "The section of the statute providing for a judgment for a return of the property, and for damages for its use in case the plaintiff shall fail in his suit, etc., contains this provision : 'Or, if the property was held for the payment of any money, the judgment may be in the alternative, that the plaintiff pay the amount for which the same was rightfully held, with proper damages, within a given time, or make return of the property.' It might be a hardship in such a case to enter an absolute judgment for the return of the property where the only interest the defendant had in it was in the nature of a lien for the payment of a debt. It is therefore seen that the effect of the statute is to relieve the plaintiff of this hardship in giving him the privilege of retaining the property by paying the money for which it was held. Under the statute he has this option, and if he does not himself owe the money for which the property is held, or for any reason does not choose to pay it, he may comply with the judgment by returning the property."

I am of opinion that the judgment should be reversed and the cause remanded.